# GEORGE F. ARCHER v. G. M. HELM.

1. EVIDENCE. *Facts not tending to prove issue. Irrelevancy.*

   In ejectment for a strip of land, where there is a controversy between owners as to the location of a dividing line, defendant claiming that the line had been fixed by agreement, it is not competent to prove that, after this, when a certain survey was made, plaintiff purchased a strip on the other side of his tract equal to what he would lose by locating the controverted line according to such survey. This does not tend to prove the defense relied upon that the line was fixed by plaintiff's agreement.

2. WITNESS. *Cross-examination. Interest in result.*

   In an action of ejectment for a strip of land, depending upon the location of a disputed boundary line, in order to show the interest of a witness, it is competent, on cross-examination, to prove that he has an agreement to fix the boundary line between defendant's land and his own according to the result of the suit.

3. EVIDENCE. *Knowledge of defendant. Circumstances admissible.*

   Where there is a question as to whether defendant in ejectment cultivated land west of a certain line, and it is proved that he visited the place, it is admissible to show by the testimony of his tenants that they did so cultivate, although they do not say that he knew of their going over the line, and he testifies that he did not know of or authorize it. What knowledge he had is for the jury to say from all the circumstances.

4. RECALLING WITNESS. *Rebuttal. Repetition of testimony. Rejection.*

   Where a defendant, as a witness, makes a certain denial, and, after plaintiff's testimony (which is contradictory of this) is closed, the defendant is again offered, not to explain or distinguish his denial, but merely to repeat it, there is no error in rejecting his further testimony.

5. BURDEN OF PROOF. *Affirmative defense. Proof of substantive fact.*

   Whenever a defense rests upon a substantive fact, the determination of which adversely to the defendant, is not necessary to the establishment by the plaintiff of his case *prima facie*, then the burden of proving that substantive fact is on the defendant.

6. SAME. *Ejectment. Disputed boundary line. Parol agreement.*

   In an action of ejectment growing out of a dispute as to the location of a division line, if the plaintiff shows that the land in controversy is within

the calls of his deed, and the defendant relies upon an alleged parol agreement, by which the line was fixed at the place contended for by him, the burden of proof is upon him to show such agreement, and it is proper so to instruct the jury.

7. SAME.    *Parol agreement.    Permanent location.    Instruction.*

In such case, the parol agreement, to be valid, must, in effect, permanently locate the division line, and it is not error so to instruct the jury.

8. RENTS.    *Mistake as to boundary.    Occupancy.    Estoppel.*

When defendant in ejectment occupies to a certain line, the plaintiff acquiescing therein under the belief that it is the true boundary, on discovering that he has title to land beyond this line, he is not estopped by such acquiescence from recovering rents of the defendant for his occupancy of the same.

9. EVIDENCE.    *Res gestæ.    Statements explanatory of conduct.*

Where defendant in ejectment claims that a boundary line in controversy was fixed by parol agreement, and, in order to show that he did not rely on this, evidence is offered to prove that defendant, with others, after the alleged agreement, employed a surveyor to locate this and other lines, it is competent for defendant to show, in explanation, that, immediately before the survey, being reluctant to have the same made, he informed a third person, who asked him to join therein, that he did not want the line between plaintiff and himself run, as he regarded it settled. Though occurring beforehand, and as an isolated fact, this is admissible as part of the *res gestæ*, and as qualifying the effect of defendant's accession to such employment.    *Meek* v. *Perry*, 36 Miss., 190.

FROM the circuit court of Washington county.

HON. R. W. WILLIAMSON, Judge.

The facts are stated in the opinion.    For a report of this case on a former appeal, when only a question of law was decided, see *Archer* v. *Helm*, 69 Miss., 730.

*Campbell & Starling*, for appellants.

1. The court erred in admitting the testimony of Fontaine that he was employed by appellant, Archer, in conjunction with Toombs and others, to make the survey in 1888.    This testimony was incompetent and misleading.    It did not go to show that Archer employed the surveyor to locate the line between Helm and himself.    The purpose of the survey, as

Fontaine said, was to find the true lines and corners around the lands of these several parties. Helm was not a party to that employment, and the testimony did not tend to show any act or conduct on the part of Archer inconsistent with the existence of an agreement between Helm and himself locating the line in controversy.

2. The court erred in excluding the testimony of Toombs as to what Archer said with reference to the line between Helm and himself just before the employment of Fontaine to make the survey. If the fact that Archer employed Fontaine to make the survey was competent evidence, as tending to prove conduct on Archer's part inconsistent with the existence of the agreement settling the line, certainly his declarations, made at the time of the negotiation, to the effect that this line had already been located by agreement, was competent to limit and explain the effect of his conduct. An admission is to be taken as an entirety, with the qualifications which limit, modify or destroy its effect. 1 Greenleaf's Ev., § 201; *Insurance Co.* v. *Newton*, 22 Wall., 32.

3. The testimony to the effect that Helm, as soon as he learned the error in the location of the lines, bought a strip of land along his western boundary; we admit, is not very definite, yet we think it was as competent to prove an act on the part of Helm consistent with the fact that the line in controversy had been fixed by agreement, as Archer's act in employing Fontaine to make the survey was inconsistent therewith.

4. The court erred in admitting the testimony of J. II. Moore, to the effect that he had agreed with Archer that, in case he lost this suit, he would not hold Archer to the line fixed between them. In view of the instruction given for plaintiff, this testimony, without limitation, was calculated to prejudice the defendant's cause.

5. The court erred in admitting the testimony of Archer's tenants to the effect that they had cultivated land west of the agreed line. Archer had testified that no one, with his

knowledge or consent, had done this, and it was not proved that he consented to such cultivation, or had knowledge of it.

6. The court erred in refusing to permit Archer to testify in rebuttal. No evidence as to the settlement of the line was offered by Helm until all the witnesses for defendant had testified thereto. In his testimony, Helm spoke of a conversation with Archer in regard to two dividing lines, as to which Archer had not been interrogated. The court held that the defendant had the burden of proof as to the agreement, and yet denied him the right of closing the evidence on that point.

7. The court erred in instructing the jury for plaintiff, that the burden of proof was on defendant as to the location of the line in question. The affirmative of the issue and the burden of proof was on the plaintiff from the beginning to the end. Only the weight of evidence shifted, and not the burden of proof. 1 Greenleaf's Ev., § 74, note *a*. There are no special pleas allowable in ejectment. Reliance on the agreement settling the disputed boundary was not in the nature of confession and avoidance, but of a denial of the allegation of the declaration that the land was located as claimed.

The instruction is also erroneous in telling the jury that the burden was on defendant to prove that the line was *permanently* located by the agreement. From the language used in the instruction, the jury was apt to infer that it was necessary that there should be embraced in the agreement the word " permanently." We admit that the line must have been intended as the permanent dividing line; but when defendant proved that it was agreed on, the presumption was that it was permanent, and the weight of evidence shifted to plaintiff to meet this presumption.

8. Plaintiff's instruction is also erroneous in telling the jury to find the rental value of the land from and including the year 1886 to the time of trial. According to plaintiff's own testimony, he agreed that Archer might occupy to the Gordon line until the true line should be located. If the line

was found to be at another place, Archer, under these circumstances, was not a trespasser. Besides, Archer took possession in the latter part of 1886, and the jury was instructed to allow for that year. See 9 Wend., 65.

Another view is that the instruction is erroneous because it excludes the idea that plaintiff was estopped by his knowledge of defendants' acts in improving the property with reference to the line. 49 Mo., 98,

9. The verdict is manifestly wrong. This court will reverse the judgment, and grant a new trial, where there are facts in evidence about which there is no dispute, which clearly show that the verdict is wrong, even though there be direct conflict in the testimony on the main point in issue. 37 Miss., 477.

*Yerger & Percy*, for appellee.

1. Appellant abandoned the claim that the land was located within the calls of his deed, and introduced testimony to show that there was uncertainty about the true line, which rendered the making of the parol agreement fixing it admissible. At any rate, the question as to whether the land was situated within the calls of his deed was fairly submitted to the jury, and the evidence in support of the verdict is overwhelming.

2. The court properly admitted the testimony of Fontaine as to how he came to make the survey of lines in the township where the land is situated. It was proper for plaintiff to show that the witness made the survey with no bias in his favor, and that he was employed by defendant. The employment of the surveyor subsequent to the time of the alleged parol agreement, was an important circumstance to go to the jury.

3. It was competent to prove that the witness, Moore, would gain a certain amount of land if the Gordon line should be established. According to appellant's theory, some novel doctrine of sanctity is to protect the interest of this

witness from the vulgar gaze, and he is to be permitted to masquerade as an unbiased witness when he had a direct interest in the result of the suit.

4. There was no error in admitting testimony that defendant's tenants occupied land west of the agreed line. It was for the jury to say, under the evidence, what knowledge the defendant had as to this.

5. The court did not err in excluding the testimony of the witness, Toombs, as to the alleged reasons that actuated Archer in the employment of Fontaine to survey the township lines. The *fact* that Archer did not join in the employment was competent, but the *reasons* that he may have assigned for not doing so were entirely irrelevant, and not admissible under any principle. It was mere hearsay. If it had been attempted simply to prove that Archer had for two years been claiming that the line had been agreed upon, the incompetency of the testimony would have been palpable. It cannot be smuggled in as an *attache* of the fact that Archer did not employ Fontaine. The reason does not strengthen the fact. The fact does not make the reason evidence.

6. The court properly refused to allow defendant to again testify after plaintiff's testimony was closed. When on the stand, he was asked about certain matters, which he flatly denied, and the parties were clearly at variance before the jury. Nothing prompted this effort to re-introduce defendant except the "last tag" principle.

7. The court will notice, from the similarity of the instructions given for plaintiff and defendant, respectively, that opposing counsel entertained substantially the same views as to the law of the case. The serious objections now urged to plaintiff's instructions have their origin largely in the untoward verdict of the jury.

It was proper to hold the defendant for rents. He did not claim that he was in possession of the land under Helm. He not only claimed to be the absolute owner, under his deed, up to the Gordon line, but believed his land extended to the

O'Hea line. He agreed, according to his evidence, to assert his claim only up to the Gordon line, and up to that line he held possession as owner, under his deed, openly and adversely to the whole world, and to Helm especially. As licensee, adverse possession could confer no title. 13 Am. & Eng. Enc. L., 547. The fact that each party believed he was in possession of his own land, and claimed title thereto, entitled the successful litigant to rents, and the unsuccessful one to the value of improvements.

7. It is not a valid objection to plaintiff's instruction that it imposed upon defendant the burden of proving that the dividing line should be permanently located. Counsel especially except to the using of the word "permanently." This is verbal quibbling. The burden of proof is imposed upon the party who alleges the existence of a fact necessary in the prosecution or defense of an action to establish it. 2 Am. & Eng. Enc. L., 649.

The word "permanently," to the use of which counsel so strenuously objects, is of the essence of the word "establish," used in his own instructions. The objection merely is to the jury being told that the defendant had to do what the law required him to do. There was no attempt by the defendant to prove an agreement as to the line, leaving the character and extent of that agreement to be presumed by the jury, but he squarely attempted to prove his case—the *establishing* of another boundary line.

As to the burden of proof, in the language of Lord Abinger, looking at these things according to common sense, we should consider what is the substantive fact to be made out, and on whom it lies to make it out. It is not so much the form of the issue which ought to be considered as the substance and fact of it. 2 Am. & Eng. Enc. L., 656.

There was no dispute about the defendant having taken possession of the land in controversy, but the assertion of there being an agreement made was contradicted. If an agreement had been made, defendant took and held posses-

sion under it. The proof that he took possession beyond the Gordon line was pertinent, as showing that no agreement that his possession should go no farther than that line had been made.

8. Not only does the evidence amply sustain the verdict, but we contend that a verdict for defendant would have been unsupported. . To deprive a man of his absolute right to the unquestioned fee to his land, it should appear clearly and distinctly, and without a shadow of doubt, that there was an express agreement between the owners of adjoining lands, deliberately settling the exact boundary line between them, and an acquiescence therein for a considerable length of time.

The judgment is right, and we ask its affirmance.

Argued orally by *R. B. Campbell,* for appellant, and *Leroy Percy,* for appellee.

MAYES, SPECIAL JUDGE, delivered the opinion of the court.

This is an action of ejectment growing out of a controverted boundary line in township 19, range 6 west, in Washington county. The line in question is that which divides sections 8 and 9. Several efforts have been made to fix this boundary. Some considerable time before this action was instituted, two certain surveys were made, resulting in what are known as the O'Hea and the Gordon lines, of which the latter is a chain or two eastward of the former.

Stating approximately, and with sufficient accuracy for the purposes of this case, it may be said that the lands of the plaintiff below lie in section 8, and, consequently, to westward of the disputed line, while those of the defendant lie in section 9 and to eastward of the said line. The defendant maintained the correctness of the O'Hea line, and the plaintiff asserted that of the Gordon line. It is not, however, out of these lines that the controversy arises ; but the understanding of them is necessary to the comprehension of one assignment of error. It is also necessary to note that the lands of

one John Moore lie in section 10, and therefore still farther eastward of this boundary line—a mile away from it—and next eastward of the defendant's lands. The line composing the southern boundary of all these lands is free from controversy.

It seems that the said Moore was desirous of improving his lands in section 10. The spot upon which he wished to erect his buildings lay in the extreme south-western corner of his supposed tract; and, should he place the improvements there, he feared they might be imperiled, because the proper location of the line between himself and the defendant was in doubt. That location was considered to depend on the other question as to whether the O'Hea line or the Gordon line was the true boundary between sections 8 and 9, the corners made by those lines with the southern boundary of that tier of sections being regarded, one or other, as the proper starting point from which to seek for the line between sections 9 and 10.

In this state of affairs, on a certain occasion, in the year 1886, a verbal agreement was made between this Moore and the plaintiff, and the defendant, at the suggestion of the plaintiff, who was a mutual friend of the other two, and was himself an expert surveyor, that the Gordon corner, as they call it (that is, the intersection of the Gordon line with the undisputed southern boundary line aforesaid), should be taken for the true corner from which to establish the lines between sections 8 and 9, and between sections 9 and 10. Plaintiff claims that this agreement was only a provisional one, to control only until a final and definite survey should settle the true line; and, further, that, if by such survey it should appear that Moore had gotten any of what is really Archer's land, then Moore was to compensate Archer by an equal quantity of land elsewhere. Moore and the defendant, Archer, on the other hand, claim that the agreement was for a permanent establishment of said two boundary lines, irrespective of the result of any future surveys. And this is the turning-point in the case.

In 1887, the next year after said agreement was made, one Porterfield made another survey, which located the line between plaintiff and defendant 14 chains and 42 links still farther eastward of the Gordon line; and this survey was verified by another made by Fontaine, in 1888. Thus, it was shown that, if these surveys be correct, defendant was occupying as his own $118\frac{50}{100}$ acres of land which belonged, in fact, to the tract of plaintiff, and which even plaintiff had always theretofore considered to be certainly the defendant's, since their controversies had been over the strip between the O'Hea and Gordon lines, lying wholly to westward of the latter.

Availing himself then of the disclosures made by the Porterfield and Fontaine surveys, the plaintiff, in December, 1888, brought this action against defendant to recover the strip between the Gordon line and the new line of Porterfield, and the rents thereof for the year 1882 and subsequently.

Plaintiff's declaration, of course, described the land as lying within the calls of his deed. Defendant pleaded non-possession, with notice of valuable improvements. On the trial, plaintiff recovered, and had judgment for the land and for $109.60, excess of rents over improvements. Hence, this appeal by the defendant below, Mr. Archer.

None of the assignments of error, of which there are several, are well taken, except the second. But since on the second the case must be sent back for a new trial, we shall briefly dispose of all the assignments, in order that the new trial may be disembarrassed of the questions therein raised.

The real controversy below was, not so much over the question as to whether the land in litigation was within the calls of plaintiff's deed (for that seems to be no longer denied), but over the claim by defendant that the Gordon line had been, by parol agreement, adopted as the permanent boundary. Plaintiff claimed that it was only provisional, as stated above. On the other hand, it is not denied by the plaintiff that suffi-

cient incertitude as to the true boundary had existed to make binding such verbal agreement, if any such were made.

The testimony of the surveyor, Fontaine, was offered by plaintiff, to show that he was employed by Archer and others to make the survey made by him, from which employment the inference of fact was invoked that Archer did not himself regard the Gordon line as final. This testimony was objected to by Archer, for the assigned reason that it does not appear that Fontaine was employed to run this particular line. We, however, hold that, by Fontaine's testimony, the employment was sufficiently connected with the line in dispute to make it competent, and, consequently, that the court did not err in this respect.

The defendant offered to prove by the plaintiff, on cross-examination, that, after the Porterfield survey had shown the Gordon line to be too far west, plaintiff himself purchased a strip of land along his western border as fixed by the Porterfield survey, in order to protect himself from encroachments by parties lying to westward of him. The idea seems to be that such purchase by the plaintiff argues that he had himself been relying on the alleged agreement fixing the Gordon line as the permanent boundary. We do not see how such a conclusion can be reached from such premises. The furthest the argument can go logically is that the plaintiff must have thought the Gordon line to be the true one. But he does not claim ever to have thought otherwise before the running of the Porterfield line. The Gordon line was the one he always contended for, while the defendant contended for that of O'Hea. We hold that the testimony offered does not even tend to prove the *agreement* relied on, and that the court excluded it rightly.

J. H. Moore, mentioned above, was a witness for the defendant. On cross-examination, the plaintiff proved by him that, by virtue of the agreement fixing the lines as aforesaid, his section of land would gain fourteen chains in width; and, further, that he had an understanding with the defendant

that, if the defendant should lose this suit, he, Moore, would not hold defendant to that agreement, but that defendant was to fall back on Moore. This examination was objected to by Archer. We hold that it was proper. The direct object and effect of it was to show that Moore was himself interested in the maintenance of the Gordon line, and was directly interested in the result of the suit.

We hold, also, that the testimony of Dunbar and of Hall, tenants of Archer, to the effect that they had cultivated lands to westward of the Gordon line, was correctly admitted. True, these witnesses do not state that Archer knew of their transgression; and he testifies that he did not. But they do show that they cultivated no farther than was done by the tenants who preceded them; that it was over the line, and that Archer visited the place. These are circumstances, whether strong or weak is unimportant here, which the jury might well consider on the question of Archer's knowledge, and his own adherence to the Gordon line.

The defendant testified, and on cross-examination he was asked about a certain proposition made to him by the plaintiff about confining themselves respectively to the O'Hea and the Gordon lines. He denied that such a proposition was made. The plaintiff testified in rebuttal, and testified that he did make such a proposition. After the plaintiff rested his case in rebuttal, the defendant offered to "rebut" this statement of the plaintiff's, but the court refused to permit it. The defendant's offer is not shown by the record to have been any thing more than a mere wish to take the stand and repeat his denial. He did not offer to explain his denial, or to distinguish in any way. We cannot say that the court erred.

The only instruction given for the plaintiff was as follows: "The court instructs the jury for the plaintiff, that if they believe from the evidence that the land in controversy is located within the calls of Helm's deed, that is, in the northwest $\frac{1}{4}$, section 9, and in section 8, township 19, range 6, they will find for the plaintiff for the land, and the rental value of

it from and inclusive of 1886 up to the present time, the defendant being entitled to the value of such improvements as he has made upon said lands prior to the institution of this suit, December, 1888, unless they believe from the evidence, and the burden of proving this is upon the defendant, that plaintiff and defendant made an agreement that the line dividing their lands should be permanently located according to the Gordon survey, that they mutually agreed to this, and defendant took and held possession of the land in controversy under said agreement."

To this instruction three objections are made: First, that it places on defendant the burden of proving the parol agreement relied on. It is urged that a distinction exists between the burden of proof and the weight of evidence; that while the latter shifts from time to time as the trial progresses, the former never does; and that, while in this trial the defendant had to produce the weightier evidence in order to be entitled to a verdict, the burden of proof was not on him. 1 Greenleaf's Evidence, § 74, note, is cited to sustain this contention; but we cannot take that view of the law. Such a distinction is made in the cases cited by Mr. Greenleaf, of which the principal is *Central Bridge Corporation* v. *Butler*, 2 Gray, 130. A critical reading of that case will show that it concedes expressly that no such distinction obtains in regard to those defenses which are essentially affirmative, such as payment or release; but that it is asserted in regard to those which are essentially traverses of some necessary allegation of the declaration, and to those only. Perceiving this fact, counsel ingeniously endeavor to meet the requirements of the case by maintaining that the defense here made, which is the parol fixation by parties of a conventional boundary, falls within that category, and is essentially naught but a denial of the averment in the declaration that the defendant wrongfully deprives the plaintiff of possession. But we must decline to follow the Massachusetts cases. They seem to us to insist on a distinction which leads to no practical difference. If the

defendant must show the preponderance of the evidence in order that his defense shall be successful, what simpler expression can be found to characterize his predicament than the familiar one that the burden of proof is on him? That is the fact; why not so phrase it? We hold the true rule to be this : That whenever the defense rests upon a substantive fact, the determination of which adversely to the defendant is not necessary to the establishment by the plaintiff of his case *prima facie,* then the burden of proving that substantive fact is on the defendant. Of course the defendant may make use, in meeting this burden, of any evidence in the case, by whomsoever produced. The Massachusetts rule, logically applied, would deny that the burden of proof is on the defendant who pleads payment to a suit on a note, for that plea is essentially a denial of the necessary averment in the declaration that the note had not been paid.

The second objection to the instruction is the use in it of the word *permanently.* The idea is, that from such language the jury "was apt to infer that the defendant had to prove that the agreement contained the words of the instruction, or, at least, that it contained the word 'permanently.'" We hold that the objection is not well taken. In order that a parol agreement be valid, it is necessary that it shall, in effect, permanently locate the disputed line. It cannot be erroneous to instruct the jury in apposite terms as to such necessary legal effect. If the question be one of delicacy, and the party have reason to fear that the instruction may be misunderstood and misapplied by the jury, he may easily ward off that danger by an explanatory instruction. This is common practice.

The third objection to the instruction is, that, by it, the jury is directed to find rents from the year 1886, inclusive. The argument is that, according to plaintiff's own showing, he agreed, in 1886, that the defendant might occupy up to the Gordon line until the true line should be determined; that this was not done until some time in 1888; consequently,

during that period, that defendant was not a trespasser, and, therefore, not liable for rents. It must be observed, however, that, during all of this time, the defendant held up to the Gordon line, not by plaintiff's license, but under and by his own claim of title. Plaintiff was wholly ignorant of the fact that his premises ran east of the Gordon line, embracing the lands now in controversy, and, so far as is shown, never suspected it. The true and only dispute between him and the defendant was, as to whether the lands of defendant did or did not extend westward of the Gordon line, so as to embrace the strip between that and the line of O'Hea; and the only agreement between them, while in form an agreement that defendant should improve up to the Gordon line, was, in its substance, nothing but a restriction of the defendant from a transgression of the Gordon line; and so it was understood by them. Archer never did understand himself to be holding the *locus in quo* by the consent of Helm, but always that he held it under his deed, and without any reference either to the dispute or the agreement. The fact that plaintiff, in common with all others, considered either the O'Hea line or the Gordon line to be the true boundary between sections 8 and 9, and, consequently, never objected, or, as defendant puts it, consented, to defendant's occupancy up to the Gordon line, cannot estop him, on an unexpected discovery of his true right, to claim rents for lands still eastward of that line. His consent was none other than that given by every man who acquiesces in the occupancy by an adverse claimant, and who is ignorant that he has a title to the premises so occupied.

The error for which the case must be reversed is this : The surveyor, Fontaine, had testified that he had been employed by Archer and others to make the survey of which he testified, and which was made some two years subsequently to the making of the agreement relied on by Archer as a permanent fixation of the disputed line. The effect of this testimony of Fontaine's, and the only thing which made it com-

petent, was to disprove the claim that Archer regarded the line as already established. It was necessary to avoid that effect in some way; and, in order to do so, Archer offered to prove by one Dr. Toombs that Archer refused to Toombs to participate in the employment, assigning to Toombs as a reason that he regarded the line as settled. The court refused to allow Toombs to give the reasons assigned by Archer for not entering into the arrangement for the survey.

In order to develop this point fully, it is best to state that Fontaine had testified that he was employed by Dr. Toombs, Mr. Moore, Dr. Shackleford and Mr. Archer; that he first spoke to Toombs, Shackleford and Moore—afterwards to Archer; that he did not know that they were all present at one time, but that he afterwards got two letters from Moore, naming the parties who wanted him to do the work. Dr. Toombs testified that Mr. Archer hung back very much; that he was disinclined to take part in the survey, and in that connection the aforesaid offer was made to prove his assigned reasons for that disinclination. It is true that this declaration of Archer's was made to Toombs, and not to Fontaine, and it is true that it was made prior to the employment, and not at the exact time of the employment, as an isolated fact, yet still we hold that it was competent as part of the *res gestæ.*

The testimony shows that, in fact, Archer had very little to do with the actual employment of Fontaine; that was done mainly by the two men, Toombs and Moore, acting for the others. It also must be stated that the testimony of Fontaine, which connects his employment with the line in controversy at all, and which saves the case from reversal on the first assignment of error, is vague and doubtful in expression. The fact of the employment by Archer is not of the gist of this case, but is only competent as an evidential circumstance, in the nature of an admission inconsistent with the claim now made by him as to the scope of the agreement insisted on. All of these considerations lead us to the con-

clusion that his declarations made to Toombs during the nego-
tiation for the employment, announcing his disinclination to
participate, and giving his reasons therefor, should have been
allowed to go to the jury for the purpose of qualifying or lim-
iting the effect of his accession to the employment. If the
fact is put in evidence against him as an admission, then
the whole truth in respect to the matter should have been
given.

The difficulty of formulating any exact rule by which the
admissibility of such declarations as a part of the *res gestæ*
shall be determined has been a source of frequent perplexity
to the courts, and a cause of common lamentation to the
judges and the text-writers. The inherent difficulty of the
subject, and the necessity of referring each case to its own
particular circumstances, are universally recognized. The
declarations in question must not be mere narratives of a past
occurrence, but must have been made at the time of the act
done which they are supposed to characterize; and they must
be well calculated to unfold the nature and quality of the
facts which they are offered to explain, and must so harmo-
nize with them as obviously to constitute one transaction.
But, while such declarations must be made at the time of the
act done, that rule is not pressed to the extent that they must
be precisely concurrent in point of time. If the declarations
spring out of the transaction, if they elucidate it, if they are
voluntary and spontaneous, and if they are made at the time
or so near to it as reasonably to preclude the idea of deliber-
ate design, and they be not a narrative of a past occurrence,
they are then to be regarded as contemporaneous. And, in
this connection, the negotiation of a transaction is regarded
often as a part of the fact itself; and here the declarations
offered were made as part of such negotiation for the employ-
ment, and to a person who was prominent in inducing Archer
to take part, and was prominent in the actual employment
when made. For these reasons, we hold that the court below
erred in excluding this testimony. *Meek* v. *Perry*, 36 Miss.,

190, 260; Wharton on Evidence, §§ 258, 259; *Bank* v. *Kennedy*, 17 Wall., 19.

*Reversed and remanded.*

Owing to the necessary absence of the Hon. THOMAS H. WOODS, one of the judges of this court, by agreement of the parties, Mr. Edward Mayes, a member of the bar, was selected to sit in his place in the decision of this case.