WIDOW F. B. D'AQUIN et als. *v.* J. S. ARMANT.

A judicial sale of a lease imposes upon the purchaser the obligation of paying the price of adjudication to the vendor, and also that of paying the rent accruing after the sale to the lessor, according to the terms of the lease.

Where a sale is made *à la folle enchère*, and the property is adjudicated to the vendor himself, he can not recover from the purchaser at the first sale the deficiency in the price.

APPEAL from the District Court of the Parish of St. James, *Duffel,* J. *A. & A. Pitot,* for plaintiff. *Berault & Legendre,* for defendant.

BUCHANAN, J. The plaintiffs sue defendant for the difference in price and expenses, caused by the failure of plaintiff to comply with his bid at an auction sale of property of plaintiffs, which was adjudicated to defendant on March 15th, 1856, for the sum of forty-five thousand dollars : the same property having been, in consequence of defendant's default, re-advertised and re-sold by auction at his risk, on the 1st of April, 1856, for the sum of forty-one thousand and forty-two dollars.

The total amount claimed by the petition, from defendant, is ten thousand five hundred and thirty-eight dollars, for which the three plaintiffs ask judgments severally, in the following proportions :

*Widow D'Aquin,* as tutrix of her minor children, owners of three-eighths of the property sold, for ........................................ $3,951 86

*Edgar Montégut,* owner of three-eighths of same, for ............. 3,951 86

*L. Lambert Bown,* owner of two-eighths of same, for ............ 2,634 57

$ 10,538 29

The sum thus claimed appears to be the aggregate of the following particular items :

1. Difference between the amount bid for the property at the first sale ($45,000) and at the second sale ($41,042) ......................... $ 3,958 00
2. Amount of rent from date of first sale to the end of the lease sold, assumed by the purchaser at the first sale, but not assumed by the purchaser at the second sale ...................... 5,934 12
3. Advertisement of second sale in various newspapers .......... 17 00
4. Funeral expenses of a slave adjudicated to defendant, which slave died in the interval between the first and the second sale. 10 00
5. Cost of notarial act of sale and certificates of mortgage appended thereto (first adjudication) ........................ 33 00
6. Bill of Auctioneers for charges and commissions on second sale.. 586 17

$10,538 29

The defendant urges the following grounds in defence of this action :

1st. That two of the plaintiffs, *Montégut* and *Bown,* gave no written authorization to the Auctioneer to sell the property which was adjudicated to defendant.

2d. That the adjudication to defendant was not made on the terms and conditions fixed by the family meeting and the order of sale; but varied therefrom in an essential particular.

28

3d. That the plaintiffs, *Montégut* and *Bown*, illegally caused a large portion of the property which was the subject of the first sale, to be adjudicated to themselves at the second sale; by reason whereof, there was not a real sale of said property at the second crying.

4th. That if said re-sale *à 'la folle enchère* be held valid, then the purchase at said sale by *Bown*, of the leases for $4000, involved the assumption by the purchaser, of the payment of the rent for the unexpired term of the leases.

1. Upon the first ground, we think the consent of *Montégut* and *Bown* to the sale of the property of which they were joint owners, by auction, is evidenced in a sufficiently authentic form, namely, by the record from the Court of Probates, in which it is set forth that the sale at auction upon the terms fixed by the family meeting of the minors *D'Aquin*, is consented to by the joint owners with said minors, the said *Montégut* and *Bown*.

2. Secondly, the terms and conditions of sale prescribed by the family meeting, were as follows : " That said bakery, together with the slaves thereto attached, horses, carts, and all other implements and utensils, together with the leases of the premises, shall be offered for sale in lump, on the following terms : one-fourth cash, and the balance at one, two, and three years credit, without interest, in notes endorsed to the satisfaction of the administrator ; that the stock of flour and biscuit be sold for cash, and in case said sale should not reach the valuation made of said property in the inventory, then the slaves, horses, carts, implements, stock of flour and biscuit, and lease, to be sold at public auction, on the following terms, viz : the slaves, one-third cash, and the balance at one year, payable in notes endorsed to the satisfaction of the administrator ; the carts, horses, implements and stock of flour and biscuit, for cash, and the lease payable monthly ; all notes to bear eight per cent. interest from maturity."

The District Court homologated the proceedings of the family meeting, and ordered the sale of the property to be made on the terms and conditions above detailed.

The material variation suggested by defendant, consists in the insertion of the following paragraph in the advertisement of the first sale, after the announcement of the terms of sale as above set forth :

" Il est bien entendu que l'acquéreur du dit établissement devra payer, en sus du montant de l'adjudication du dit établissement, les loyers à bail des terrains et édifices servant à l'exploitation de la boulangerie, conformément aux conditions des baux ci-aprés détaillés, et que les dits loyers ne doivent pas être déduits du prix de l'adjudication de la boulangerie et des esclaves."

We do not find, in this announcement, any variation from the terms of sale, as fixed by the family meeting. It was held by this court, in the case of *Bartels* v. *Creditors*, 11 An. 434, that the public sale of a lease for account of the lessees' creditors, imposed upon the purchaser the obligation of paying the price of adjudication to the vendor, and also that of paying the rent accruing after the sale, to the lessor, according to the terms of the lease. We considered the bid for the lease in such a case, as a premium which the bidder was willing to give for the transfer of the lease to himself, with all the obligations, as well as all the rights thereto attached, from the moment of the adjudication. And indeed it is difficult to perceive how we can arrive at any other conclusion. The lessee, unless prohibited by the terms of the lease, may transfer all his rights under the lease to another person. C. C. 2696. But the transferree takes those rights *cum onera* of the obligations of the transferror, under the commutative contract thus trans-

ferred. That contract is an entirety, and the transferree is put in the place and · stead of the transferror.

It is out of the power of the lessee, if he should even desire to do so, to sever his rights from his obligations, and to transfer the one without the other. No man can transfer to another more right than he himself possesses. If, indeed, it were the lessor who sold the lease, the transferree would, of course, be vested with the right to collect and keep the rent accruing thereafter; because that is the right of the lessor under the contract.

The announcement by the auctioneer, therefore, in his advertisement of the sale of the leases of the D'Aquin Bakery, that the purchaser would be bound, over and above the price of adjudication, for the payment of the rent to the lessors, to accrue after the sale, according to the terms and conditions of the several leases, was merely a notice, out of abundant caution, to bidders who might be ignorant of the law; but which notice added nothing to the conditions of sale, as fixed by the order of court. On the contrary, the legal effect of the adjudication would have been the same, had this announcement been omitted from the advertisement.

3. Upon the third ground of defence to this action, the proof is, that at the sale made upon defendant's *folle enchère*, two of the plaintiffs, *Montégut* and *Bown*, were bidders, and that portions of the property sold were adjudicated to the former, for the price of nineteen hundred and twenty-five dollars; and to the latter, for the price of fourteen thousand and fifteen dollars.

It was held, in the cases of *Baham* v. *Bach*, 13 La. 287, and *Banks* v. *Hyde*, 15 La. 391, that it is illegal for the owner to bid at an auction sale of his property, and that he cannot enforce a sale made under such circumstances.

Also, in the case of *Municipality* v. *Hennen*, 14 La. 586, it was held, that the vendor could not recover from the adjudicatee at an auction sale, the deficiency in the price of the same property, when resold *à la folle enchère*, if the vendor purchased at the second crying.

Upon the authority of these decisions, which have established the law on this point for twenty years past, we must consider the defendant as released from his bid of the 15th of March, by the act of the two plaintiffs, *Montégut* and *Bown*, to the extent of the interest of those parties, being five-eighths, in the property sold.

4. The next ground of defence set up by defendant is, that *Bown* and *Rodriguez*, the purchasers at the sale, *à la folle enchère* of the leases of the premises occupied by the D'Aquin Bakery, assumed to pay the rents from the day of sale, as they should fall due.

We have already expressed our opinion of the legal effect of the sale, for account of the lessee, of an unexpired lease. And in this connection we have declared, that the express announcement at the first sale, that the rents would be payable by the purchaser, over and above the amount of his bid, was nothing more than what would have been the legal effect of the bid, without such announcement. Now, it is a fundamental principle of the sale *à la folle enchère*, that the second crying must be on the same terms and conditions as the first—" as if the first adjudication had never been made," is the expression of Article 2589 of the Code. But the plaintiffs pretend that the defendant voluntarily submitted to have the second crying made on different conditions, in this respect, from the first.

This inference is drawn from a passage in a document signed by defendant,

three days after the adjudication; in which document defendant renounces the adjudication, from inability to comply with its terms; waives the notice, (mise en demeur,) required by law for sales *à la folle enchère*, consents that the property be re-sold at his risk, after ten days advertisement; and obliges himself to make good whatever deficit there might be at the second crying. Then follows the passage upon which the plaintiffs base their pretention to change the terms of the sale of the leases; and which we transcribe at full length.

" Le présent consentement est donné à la condition expresse, demandée par moi à mes risques et périls, que les esclaves seront vendus séparément, aux mêmes conditions et termes que celles de l'adjudication qui m'a été faite, les effets mobiliers pour du comptant, *et les baux des édifices aux conditions accordées à F. B. D'Aquin & Co.*, le preneur des baux devra donner cautions satisfaisantes."

We cannot agree to the construction put by the counsel of plaintiffs upon this written consent of defendant. It will be borne in mind that defendant bought the slaves, stock in trade and all the appurtenances of the D'Aquin Bakery, including several unexpired leases of the buildings and premises occupied by said bakery, in one lot, for a price payable one-fourth cash, and the balance at one, two and three years credit. But in renouncing the adjudication, and consenting to a re-sale at his risk, the defendant seems to have considered that it would be more to his advantage to have the property sold in separate lots, and some of it upon different terms from the first sale. He, therefore, required that the slaves should be sold separately, partly for cash and partly upon a credit: that the movable effects should be sold for cash; and that the leases should be sold *upon the conditions granted,* (by the terms of the contracts of lease,) *to F. B. D'Aquin & Co.*

We can attach no other signification to these last words, than that the price bid for the leases should be made payable at terms corresponding to the falling due of the rent by *D'Aquin & Co.* under their leases.

The defendant cannot have forgotten that he was bound himself, under his own bid, to pay the rent, in the place and stead of *D'Aquin & Co.* to their lessor, over and above the price of adjudication of the lease. And we will not presume, in the absence of an express declaration by him to that effect, that his intention was to remain bound himself for the accruing rent, until the end of the lease, notwithstanding the sale and transfer of the lease to another; in one word, to remain burdened with the obligations, although divested of the rights of lessee.

If, therefore, the plaintiffs have re-sold these leases, at the second crying, without imposing upon the purchaser the obligation of paying the rent to the lessor, (supposing such a thing possible, without the formal consent of the lessor,) they cannot be allowed to hold defendant bound for such rent, but must pay it out of of their own pockets. We will add, that the expressions of the advertisement of the second sale and of the proces verbal of the second adjudication, relative to the terms of sale of the leases, are obscure, and do not appear to us necessarily to imply the very material variation from the terms of the adjudication to defendant which the argument of plaintiff's counsel suggests.

In accordance with the above conclusions, we deduct from the claim of plaintiff, 1st, the item of $5934 12, rent of the premises, less $179 58, being the amount due by defendant for half-a-month, from March 15th to April 1st, 1856, which intervened between the first and second adjudications; and 2d, five-eighths of the deficit at the second crying of the property, with five-eighths of the charges

of the second sale, being the proportion claimed by *Montégut* and *Bown* in the first, third, and sixth items of plaintiffs' account of damages, as detailed in the commencement of this opinion.

We state the account between the plaintiffs severally and the defendant, as follows :

*John S. Armant*, Dr., to *Widow D'Aquin*, tutrix, &c—

For ⅜ of $3958 difference between the two adjudications.... $1484 25

  " ⅜ of half-a-month's rent of premises occupied as D'Aquin
     Bakery, at $359 16 per month.................... 67 33

  " ⅜ of items No. 3, 4, 5 & 6 in bill of particulars at page 2
     of this opinion................................ 242 31

                        Total.................. $1793 89

*John S. Armant*, Dr., to *Edgar Montégut*—

For ⅜ of half-a-month's rent of premises leased, (March 15th
     to April 1st,)................................... $67 33

  " ⅜ of items 4 & 5 in bill of particulars above............ 16 12

                        Total.................... $83 45

*John S. Armant*, Dr., to *L. Lambert Bown*—

For 2-8 of half-a-month's rent as above.................... $44 89

  " 2-8 of item 4 and 5 of bill of particulars................ 10 75

                        Total.................... $55 64

It is, therefore, adjudged and decreed, that the judgment of the District Court be reversed ; that the *Widow D'Aquin*, tutrix of the minor children of *F. B. D'Aquin*, recover of defendant, *John S. Armant*, seventeen hundred and ninety-three dollars and eighty-nine cents, with interest from judicial demand ; that *Edgar Montégut* recover of *John S. Armant* eighty-three dollars and forty-five cents with interest from judicial demand ; that *L. Lambert Bown* recover of *John S. Armant* fifty-five dollars and sixty-four cents, with interest from judicial demand ; that the defendant, *John S. Armant* pay the costs of the District Court ; those of appeal to be borne in equal proportions by the plaintiffs and appellees.