### No. 1194.

L. D. SPEARS VS. HIS CREDITORS.—J. R. FULLER & CO., OPPONENTS.

Any creditor may oppose the appointment of a syndic, or charge fraud against the insolvent debtor, by means of an opposition laid before the Court within ten days next following the meeting of creditors.

The acceptance of an insolvent's surrender and the selection of a definitive syndic by a meeting of his creditors, cannot conclude judicial inquiry into the legality of the syndic's appointment or a charge of fraud against the insolvent.

At such a meeting of the creditors of the insolvent, their respective claims are certified on oath to be true and legitimate, and such certification of their claims entitles them to vote. This is an *ex parte* proceeding before a notary public possessed of no judicial powers, and cannot operate as an estoppel or *res judicata* in respect to subsequent judicial proceedings.

At such a meeting of creditors only two questions can be presented or determined—one is the acceptance of the insolvent's surrender and the other is the selection of a syndic.

Before any proceedings can be taken looking to the sale of the property of the insolvent, and the application of the proceeds to his debts, it is necessary that a syndic should have been qualified and an order of court for the sale obtained. As an incident of such proceedings, a meeting of creditors must be called for the purpose of determining the terms and conditions of sale.

Mortgaged and privileged creditors are not bound by the decision of the majority of other

creditors, whether they desire the property offected with their liens to be sold for cash or on terms of credit in satisfaction thereof.

Privileges must be ascertained and settled contradictorily with all the creditors. Creditors cannot litigate their demands separately against the syndic, or in an opposition to the appointment of a syndic.

APPEAL from the Third District Court, Parish of Claiborne. *Young*, J.

*Everett & Everett* and *McClendon & Seals* for Opponents and Appellants:

*Res adjudicata* cannot be raised as to a question which was not made an issue, and which has not been adjudicated upon.

Estoppel is founded upon the principle that a party is bound by his previous actions, admissions or allegations; so where he has a vendor's privilege and fails to ask for and have it recognized in the judgment, he is not afterwards estopped from claiming his privilege in a contest with other creditors. 29 Ann. 841; 32 Ann. 826, 827.

The renewal of a note for the purchase price of machinery and fixtures does not novate the obligation. To effect a novation the intention of the parties must be expressed. Novation is never presumed. C. C. Art. 2190, 2185 *et seq.*; 34 Ann. 534; 32 Ann. 822; 24 Ann. 193; 6 R. 443; 4 R. 493; 8 M. 431.

The privilege of the vendor springs from the nature of the debt, and exists by force of law, and where a judgment creditor is clothed by law with such a privilege, the mere absence of any expressed recognition of the privilege of the judgment of the court does not impair the lien. 32 Ann. 826, 827; 29 Ann. 841.

In insolvent proceedings, privileged creditors have the right to dictate how the property on which they have a privilege may be sold. They are not premature in asserting this right before the property is sold and the funds ready for distribution by the syndic. R. S. Sec. 1800.

Where an insolvent files an application for a surrender, and alleges himself to be doing a farming and milling business and engaged also in merchandising, and he fails to surrender his books of accounts, notes, etc., without assigning any good reason for withholding them, his petition will be rejected and his surrender denied. 8 L. 318; 1 R. 170.

Where the ceding debtor fails to surrender all of his property or goods, or gives an unfair preference to some creditors, his petition will be rejected. R. S. Sec. 1804, 1786.

*J. W. Holbert, contra.*

The opinion of the Court was delivered by

WATKINS, J. Fuller & Co. oppose the cession of their insolvent debtor, Spears, and the homologation of the proceedings of a creditors' meeting, whereat a syndic was chosen and the terms for the sale of his property fixed on the following grounds, viz:

1. That they were placed on the insolvent's schedule of debts as ordinary creditors, when they should have been placed thereon as creditors with vendor's lien and privilege on a certain steam-mill, engine and fixtures which are included amongst the property surrendered.

2. That Jacob Stein & Co. were placed upon said schedule as creditors, when they were not, in fact.

3. That just prior to making his surrender, the insolvent favored. some of his creditors, to their prejudice and injury, by giving them property in satisfaction of their demands, and "this was an unfair preference, working an injury to the rest of his creditors."

4. That the schedule of his assets did not include the whole of the insolvent's property.

5. That the insolvent did not produce, and on proper demand therefor, failed and refused to produce and surrender "his books, accounts, notes, etc., for inspection."

Opponents substantially aver that, in so doing, the insolvent was guilty of such fraud as should deprive him of the benefits of the insolvent law.

The insolvent denies all of these charges; alleges that he made a fair and faithful surrender of his property, and avers that all those who are placed on his schedule are really and actually his creditors.

He also pleads *res judicata,* estoppel, payment and novation.

The demands of opponents are rejected in the court below, and they have appealed.

I.

The pleas of estoppel and *res judicata* are predicated on the proceedings of the creditors at the general meeting, whereat the surrender of the insolvent was accepted, a definitive syndicate chosen, and the terms of sale of property regulated.

It is the homologation of those proceedings which is resisted by opponents.

The pleas are not well founded. The law provides that "should any creditor of an insolvent debtor deem it necessary to oppose the appointment of a syndic or to charge fraud against the debtor, he shall, *within ten days next following the meeting of creditors,* lay before the court his written opposition, stating specially the several facts of *nullity of the appointment or fraud alleged against the insolvent debtor.*" R. S. Sec. 1802.

It is obvious, therefore, that the acceptance of an insolvent debtor's surrender by a majority of his creditors in number and amount does not preclude enquiry into the legality of the syndic's appointment, much less the examination of a charge of fraud preferred against the debtor.

Express permission is given by the statute to "any creditor * * to oppose the appointment of syndic or to charge fraud against the

debtor " *after* the meeting of the creditors have accepted the surrender and selected a syndic.

On such proceedings no question of fraud or nullity is raised. The statute provides that " at the meeting of the creditors, *after having certified on oath their respective claims to be true and legitimate, they shall proceed to the appointment of a syndic*." R. S. 1796.

Such certification on the oath of the respective creditors is necessarily *ex parte*. It is made before a notary public possessed of no judicial power whatever. It would be anomalous, indeed, to hold that such a proceeding could estop or debar judicial inquiry. It is only after the insolvent's surrender has been formally acted upon and accepted by his creditors that those dissatisfied therewith are called upon to make opposition.

The pleas of *res judicata* and estoppel cannot prevail.

## II.

An examination of the *proces verbal* of the proceedings of the meeting of the creditors discloses the fact that not alone was a definitive syndic elected, but the terms of sale of the insolvent's property were fixed, and same was ordered to be sold, subject to such privileges as may exist thereon according to law, the amount of all bids less than ten dollars payable in cash, and those in excess of that sum payable on the first of November following.

Opponents complain of this part of the proceedings on the ground that the creditors had no authority " to fix the terms of sale of the machinery," etc., on which they assert a vendor's privilege.

The petition of the insolvent, which accompanies this schedule, shows that he desired to make a voluntary surrender of all of his property to his creditors, and that for the purpose of laying before them a statement of his affairs, a meeting of his creditors should be called. It is accompanied with a prayer that a meeting of his creditors be convoked before a notary public, at a time and place to be indicated, at which time and place he might " lay before them his affairs and surrender to them his property," and that in the meantime all proceedings against his person and property should be stayed. The order of court followed the averments and prayer of the petition.

It is apparent that the creditors had not, at this stage of the proceedings, any right to fix the terms of sale of the property of the insolvent. Under the prayer of the petition and order of the court, there were but two questions submitted to their consideration, and those were, 1st, the acceptance of their debtor's surrender, and, 2d, the

selection of a definitive syndic. This was the only power given to such a meeting of creditors. R. S. Sec. 1796.

Of course, it was absolutely necessary that the creditors should first accept their debtor's surrender and choose some one to undertake the administration of his estate, and that he should have qualified and entered upon the discharge of the duties of his office before any proceedings could be taken looking to the sale of the debtor's property, and the application of the proceeds to the payment of his debts.

These things having been done, the property ceded may "be ordered by the court to be sold at public auction, at such time and place and upon such terms and conditions as may be determined by the creditors." R. S. 1812.

But such order must be preceded by a petition of the syndic, and when presented the court will convoke a meeting of the creditors *for that purpose.* The mortgaged and privileged creditors shall not be bound by the decision of the majority of the other creditors, if they desire the property affected with their liens to be sold on a credit· They have, also, the right to require that a sufficiency thereof be sold for cash to satisfy their privileged claims. R. S. Sec. 1800.

The proceedings of the creditors' meeting, in so far as they relate to the fixing of the terms of the sale of the insolvent's property are premature, and, on that account, are null and void. For this reason we do not feel authorized to decide whether opponents are entitled to the recognition of their vendor's lien or not. It must be relegated to some future proceeding and determined contradictorily with other creditors of the insolvent.

The total assets surrendered are stated to be worth only $2800, and the insolvent's debts are placed at $3800. If the claim of opponents is recognized as being secured by a vendor's lien, and entitled to be paid by preference, a large portion of the assets will be absorbed thereby, and the amount applicable to ordinary debts correspondingly reduced. Hence, ordinary creditors have an interest in the determination of this question.

In Finney vs. Provosty, Syndic, 14 Ann. 218, it was held that "privileges must be settled contradictorily with all the creditors upon a tableau of distribution filed. The creditors cannot litigate their demands separately against the syndic." Faber vs. McRae and Provosty, 14 Ann. 657, and authorities therein collated; Robert vs. His Creditors, 2 Ann. 535.

### III.

A fair preponderance of the testimony favors the validity of the debt of Jacob Stein & Co. that is entered upon the insolvent's schedule. It is at least sufficient to justify the insolvent in placing it there and to exonerate him from the charge of fraud that opponents have preferred against him on that account. But we do not hold that the proof submitted in reference to this claim can, in any manner, affect the rights of other creditors. The validity of said debt, as such, must, like the question of opponents'.privilege, be relegated to future adjustment.

### IV.

On the charge preferred against the insolvent of having given goods and property to some of his creditors in satisfaction of their demands, no proof was adduced by opponents. They rest this branch of their case exclusively upon the admissions made by the insolvent in his evidence.

They are to the effect, substantially, that shortly anterior to making his surrender, his saw-mill was destroyed by fire and he collected $1648 insurance money. This he expended for goods, in payment of plantation supplies, and in making payment of some small debts he owed. To his answer is appended an itemized statement of such expenditures.

He admits that he gave small amounts of goods in exchange for labor, corn and other things, and that he paid a few small debts that he owed in goods. But the amount of the debts thus paid was quite small. He states that, at the time of his surrender, he had none of the insurance money on hand; that he had no intention of defrauding his creditors in thus expending his money and disposing of his goods; that his mercantile business was quite small—his stock scarcely exceeding $300 at any time.

He says " the goods and their value were used by myself and family and mill-hands and farm-hands—and I sold a part of them. The amount disposed of and the amount on the schedule under seizure, accounts for all the goods I had on hand. I had no money or amounts due for goods, or goods that were not surrendered."

There is no countervailing evidence. Some of his neighbors testify to his good reputation and character.

We think it would be a strained interpretation of these acts of the insolvent debtor to style them fraudulent in the sense of the provisions of R. S. Sec. 1802 *et seq*. On the contrary, they indicate

an intention to satisfy his debts just as speedily as possible, consistent with his slender resources. It was the seizure of his property by the opponents, which brought about his surrender. This ground of opposition is untenable.

## V.

The proof satisfies us that the schedule fairly accounts for all the insolvent's property.

## VI.

The insolvent states that he kept no mercantile books. The only one he did keep was a small memorandum book, and this he tendered to the opponents in court. He evidently does not come within the denunciation of the statutes against "those who, being merchants and shop-keepers, shall have concealed their commercial books and papers    *    *    with the intention of keeping same from their creditors." R. S. Sec. 1802.

## VII.

We have taken the pains to review with care all the points of objection urged *pro* and *con*, and have reached the conclusion that the action of the creditors in fixing the terms of sale of the insolvent's property was premature and unauthorized, and that, in this respect their proceedings should be annuled; that the questions raised with regard to the alleged privilege of the opponents, and the validity of the debt of Jacob Stein & Co., should be postponed until the *concursus* is formed and adjudicated therein contradictorily with all the creditors; and that the judgment should be, in other respects, affirmed.

It is therefore ordered, adjudged and decreed that the judgment appealed from be so amended as to reject and annul that part of the proceedings of the creditors' meeting which fixes the terms of sale of the insolvent's property; and further amended so as to postpone consideration of the opponent's privilege, and the validity of the debt of Jacob Stein & Co. until a *concursus* is formed with all the creditors.

It is further ordered, adjudged and decreed that in all other respects said judgment be affirmed, and that the costs of appeal be taxed against the succession of the insolvent, and those of the lower court to await the final termination of proceedings in the court *a qua*.