The opinion of the court was delivered by
Blanchard, J.
When the American National Bank failed and a receiver thereof was appointed, M. Schwartz & Company, and the individual members of that firm, Moses Schwartz and Meyer G. Weil, owed it a large sum of money represented by overdrafts on the bank, and by promissory notes executed by Schwartz & Co., and by M. G. Weil to the order of, and indorsed by Schwartz & Co.
Certain shares of stock of the Schwartz Foundry Co., Limited, and of other corporations, and certain bonds of the Teche Railroad and Sugar Company had been pledged to the bank to secure the indebtedness.
The firm of M. Schwartz & Co. failed and Sumpter Turner and Edward Weil were ichosen as syndics thereof, and of the individual members of the firm.
*1615 The receiver of the American National Bank attended the meeting' of the creditors of the firm, proved the claim of the bank and voted in the insolvent proceedings to accept the cession and for the appointment of the syndics.
Finding it necessary to realize on| the collaterals pledged to the bank, the receiver brought the present action against Turner and Wiel, syndics, the object of which is to obtain an order for the sale of the pledged securities and, to this end, to have the claim judicially recognized and liquidated.
The prayer is for judgment for the amount claimed to be due, with interest, and for recognition of the bank’s rights as pledgee of the securities named in the petition, and for a decree ordering the sale of the same at auction after due advertisement, etc. — the proceeds thereof to be applied pro tanto to the extinguishment of the indebtedness.
Exceptions of no cause of action, estoppel, res judicata and other defenses interposed by the syndics were, for the greater part of the indebtedness, held not tenable.
There was judgment by the district court, in favor of the plaintiff against the defendants for sums aggregating $74,045.16, with interest, recognizing- the pledge claimed, ordering the sale at auction of the stocks and bonds pledged, and the application of the proceeds thereof to the payment of the indebtedness recognized.
With regard to another part of the indebtedness, which appeared not to be secured by pledge, the demand as to same, in the manner here presented, was dismissed, without prejudice to plaintiff’s right to assert same by due course of law in the insolvency proceedings of M. Schwartz & Oo.
Defendants appeal.
On their behalf it is contended that the judgment appealed from cannot stand because it does not appear affirmatively, either from the judgment itself or from the minutes of the court a qua, that the judgment was read in open court prior to its signature by the judge.
It is true the judgment does not recite it was read in open court. Its decretal part is followed by these words:
“Judgment rendered in open court May 1, 1899”.
“Judgment signed in open court May 5, 1899”.
Then appears the judge’s signature.
It is essential judgments should be read in open court (C. P. 543), *1616 and where it does not appear from their recitals, or from the court’s minutes, that they are, or have been, read, they will, for that reason, be set aside by the appellate court.
The minutes, however, of May 5, 1899, show that the judgment in the instant case was read in open court. That suffices.
Woodlief vs. Logan, 50 La. Ann. 438.
Another, contention of defendants, assigned as error here, is that it was necessary for the receiver to aver and prove he was authorized by the Comptroller of the Currency, U. S. Treasury Department, to institute the present action, and to sell at public auction the collaterals pledged to secure the indebetdness declared on, and that without this authorization the judgment recovered cannot stand.
This position has no sufficient basis in law to rest upon.
Section 5234 of the Revised Statutes of the United States provides that the receiver of a national banking association, “under the direction of the Comptroller, shall take possession of the books, records and assets of every description of such association, collect all debts, dues and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell, or compound all bad or doubtful debts, and, on a like order, may sell all the real or personal property of such association, on suclh terms as the court shall direct.”
The receiver here could not sell the collaterals in his hands without obtaining the order of a court of competent jurisdiction, and this order must fix the terms of the sale.
The object of this suit was to obtain such an order. The Civil District Court of the Parish of Orleans is a court competent to grant the order. It did so.
We do not find from the statutory law, nor from the decisions of the courts, that before applying to the Civil District Court for the order to sell the pledged stocks and bonds, the receiver must obtain the formal authorization of the Comptroller to make the application, and that in addition to the order of court, he must also have the formal authority of the Comptroller to sell.
“The language of the statute authorizing the appointment of a receiver to act under the direction of the Comptroller means no more than that the receiver shall be subject to the direction of the Comptroller. It does not mean he shall do no act without sjpecial instructions. His very appointment makes it his duty to collect the assets and debts of *1617 the association. With regard to the ordinary assets and debts no special direction is needed; no unusual exercise of judgment is required. They are to be collected, of course; that is what the receiver is appointed to do”.
This was the language of the court in Bank vs. Kennedy, 17 Wall. 19, 21, 22.
It is true a receiver cannot bring a suit to enforce a stockholder's liability until the Comptroller ascertains that it is necessary to assess the stock, fixes the amount of such assessment, and gives him authority to collect. That is because stockholders are not ordinary debtors of the bank. The distinction between a suit of that character and the one at bar is clearly pointed out in Bank vs. Kennedy, supra.
See also Morse on Banks, § 150; Boone on Law of Banking, § 433; Morrison vs. Lee, 24 Blatchf., 291, 294; Hayden vs. Thompson, 71 Fed. Rep. 60, 64, 65, 66.
The cases respecting the authority of a president of a police jury to bring actions have no bearing on the instant case.
Another contention of the defense is that a creditor of an insolvent cannot bring, singly and separately, a distinct and independent suit to fix his indebtedness and have his lien, privilege or pledge recognized against the syndic; that the syndic represents the mass of the creditors and is without right or capacity to stand in judgment in a proceeding such as the present one.
It is quite true that a suit against the syndic of an insolvent to establish a privilege on the property of a ceding debtor can have no effect against the other creditors, who are the real parties in interest, as was held in State ex rel. Simmons & Cohn vs. Judge, 50 La. Ann. 624. And that the question of the existence and rank of privileges must be settled contradictorily with all the creditors in contest over the tableau of distribution filed, as was held in Tenny vs. Provosty, 14 La. Ann. 218, and other cases.
But this is not a suit to establish the existence of a privilege, nor to rate the rank of a privilege assented on the' proceeds of property which had passed into the hands of the syndics and been administered by them. Here the) stocks and bonds pledged to secure the indebtedness of Schwartz & Co. to the American National Bank never passed into the hands of the syndics of the insolvent firm, and, of course, were not and could not be administered by them.
*1618 Clark vs. His Creditors, 43 La. Ann. 737; Denis on Contracts of Pledge, § 260.
They were in the possession of the pledgee and passed under the control of the receiver appointed to the pledgee. The syndics of the insolvent pledgors had no right or interest in same save as to the residuum, if any, which might be left over after satisfaction of the indebtedness due the pledgee.
The syndics could not sell the collaterals pledged, and the proceeds of same when sold by the pledgee had no place upon any tableau of distribution which the syndics might file in the insolvent proceedings, except as to the residuum aforesaid. It is true, in order to get at this residuum, to ascertain if there were or would be a residuum, it were competent for the syndics to take action to compel the sale by the pledgee of the collaterals. 11 La. 225; 40 La. Ann. 37; 43 La. Ann. 737; Denis on Contracts of Pledge, § 260.
Put since there would be nothing for the syndics to administer or deal with on their tableau of distribution, save this residuum, it is clear a contestation between the creditors of the insolvent firm over the tableau of distribution could not properly embrace or involve the pledgee’s right to dispose of the property pledged in order to realize the indebtedness due it.
Yet, since under the statutes of the United States regulating the action of receivers appointed to insolvent national banks, the receivei herein could not sell the collaterals in question in his hands except upon the order of a court of record of competent jurisdiction, it were necessary for him to take proceedings to obtain such order.
He could not be compelled to wait such time as the syndics of Schwartz & Co. might see proper to take before filing a tableau of distribution, even if the question here arising could properly be determined in a contest over such tableau.
The receiver was entitled to take action at any time, the claim of his principal being due, to realize on the pledged stocks and bonds.
He could not be expected to make parties to his suit, to obtain the order to sell, all the creditors of Schwartz & Co.
I-Ie was not obliged to litigate with them his right to obtain such order.
His suit is not even one to establish a pledge claimed. He tells the court the insolvent firm of Schwartz & Oo. owes him, in his official ca- *1619 pa city, an indebtedness, and to secure it he has in pledge certain stocks and bonds which he wants to sell in order to realize payment of the indebtedness. He asks an order to sell. As incidental to his right to obtain this order he must establish the indebtedness he claims, and he does so.
Were Schwartz & Co. not commercially dead, were they still a going concern and not in the insolvent court, the receiver would proceed against them as parties defendant to this his suit to obtain the order to sell. But since they are insolvent and their affairs in the hands of syndics appointed to administer the same, it is obvious that the legal representatives of the insolvent estate, the syndics, are properly made parties defendant in this action to obtain the order to sell the property pledged.
They have an interest to represent — the eventual right to the residuum. As we have seen, they could, themselves, sue to enforce the ascertainment and realization of this residuum. They could be parties plaintiff, yet we are told they may not be parties defendant.
This is met by the express terms of the law which authorizes a syndic to sue and he sued in everything which respects the rights and actions pertaining to the insolvent debtor. R. S. 1811.
A further contention advanced by the defence is, that the receiver has forfeited his rights as pledgee by proving his claim as creditor and participating in the meeting of creditors called to accept the cession made by the insolvent firm of M. Schwartz & Co., elect syndics and fix the terms of sale of the property ceded, without expressly declaring and reserving his rights as pledgee in the stocks and bonds which the bank held. It is on this that the exception of estoppel is predicated.
It is also contended that when the proceedings of the creditors’ meeting were homologated without opposition on his part, his claim as pledgee was adjudicated against him. Hence, the plea of res judicata.
The fact that a creditor holds in pledge certain securities or property as guarantee of his claim does not render him ineligible to attend a creditors’ meeting, nor militate against his proving his claim and voting for a syndic.
Enet vs. His Creditors, 4 M. 404; Jones on Pledges, § 587.
In short, he may still take part in the insolvent proceedings, and by doing so, if he have a pledge, privilege or mortgage, he does not forfeit same. This is so, even though he make no statement or declaration *1620 concerning' the security he holds, and stipulates no special reservation of his rights touching the same. There appears to be no requirement of the insolvent law that he should state what security he has and that he must specifically reserve his right of pledge at the creditors’ meeting on penalty of forfeiting the same.
And where the creditor with a pledge appears at the meeting and participates therein, making no mention of his pledge and no reservation of rights thereunder, and subsequently the prooes verbal of the meeting is homologated without opposition on his part, we do not find the insolvent law of the State to be that such homologation has the force of an adjudication on all questions of privilege and pledge as between the creditor claiming it and other creditors.
See Spear vs. His Creditors, 40 La. Ann. 650; Chaffe, Syndic, vs. Scheen, 34 La. Ann. 687; Prevost, Syndic, vs. Walther, 48 La. Ann. 221; Pinsky vs. Resweber, 49 La. Ann. 246.
Judgment affirmed.
Rehearing refused.