# TURNER *v.* RICHARDSON.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 408.   Submitted October 29, 1900.—Decided January 7, 1901.

It is again decided that, to render a Federal question available on writ of error from a state court, it must have been raised in the case before judgment, and cannot be claimed for the first time in a petition for rehearing.

THIS was a motion to dismiss or affirm. The case is stated in the opinion of the court.

*Mr. Frank L. Richardson* and *Mr. Frank Soulé* for the motion.

*Mr. Henry L. Lazarus* and *Mr. J. N. Luce* opposing.

Mr. Justice McKenna delivered the opinion of the court.

The commercial firm of M. Schwartz & Company of the city of New Orleans was indebted to the American National Bank of that city on the 5th of August, 1896, in the sum of $88,600.16. To secure this indebtedness certain shares of the Schwartz Foundry Company and other securities were pledged to the bank.

Schwartz & Company became insolvent, and after proper proceedings in the civil district court of the parish of Orleans, Sumpter Turner and Edward Weil were elected syndics of the firm and of the individual members thereof. Weil subsequently died and Turner was elected sole syndic, and is plaintiff in error here.

The bank also failed, and F. L. Richardson was appointed receiver by the Comptroller of the Currency. He attended the meeting of the creditors of the insolvent firm, proved the claim of the bank, voted to accept the cession and for the appointment of the syndics. Subsequently he applied to the civil district court to have the claim recognized and his rights as pledgee enforced by a sale of the securities pledged and the proceeds applied to the payment of the claim. Exceptions to his petition were filed and overruled, and an answer was then filed. The case was tried and judgment rendered in favor of the receiver for $74,045.16, being the greater part of the claim, and the securities pledged were ordered to be sold and the proceeds applied to the payment of the indebtedness adjudged. A suspensive appeal was taken to the Supreme Court of Louisiana and the judgment was affirmed. 52 La. Ann. 1613. This writ of error was then sued out.

One of the assignments of error in the state Supreme Court was as follows:

"That it is not averred nor proved by plaintiff, nor does the record show the averment and proof, that the receiver of the American National Bank was authorized to sue and stand in judgment herein, nor that the receiver was authorized to have sold the collaterals set up as pledged at public auction in the manner demanded by the receiver or ordered by the court; that without the direction and authorization required under sec-

tion 5234 of the United States Revised Statutes, the receiver was incompetent to stand in judgment herein and to have sold or to cause to be sold the stocks, bonds and securities belonging to or pledged to the American National Bank, and that, therefore, his demand for a judgment for the amount claimed, with recognition of a pledge, and his demand to have the alleged pledged collaterals sold, should be rejected at his cost."

In his brief for rehearing filed in the Supreme Court of the State plaintiff in error urged "that the jurisdiction over and affecting the liquidation of national banks was vested exclusively in the United States Circuit Courts and the Federal courts, and that the state courts were without jurisdiction, in the said cause, to grant and order the sale authorized under section 5234 of the United States statutes and its provisions, said defendant and plaintiff in error citing paragraphs 3, 10 and 11 of sec. 629 of the United States statutes, and the proviso of sec. 4 of the act of Congress, adopted August 13, 1888; that said paragraphs and said proviso vested the courts of the United States with exclusive jurisdiction in cases commenced by the United States by direction of any officer thereof, or cases for winding up the affairs of such (national) banks."

It is assigned as error here that the Supreme Court of Louisiana erred in holding—

"1. That the defendant and plaintiff in error was not entitled to the right and privilege, under sec. 5234 of the United States statutes and its provisions, to have the direction and authority of the Comptroller of the Currency for the application to sell such securities, the sale, and the time, manner, and terms thereof;

"2. That defendant and plaintiff in error was not entitled to have the proceedings for the sale instituted and prosecuted by a person competent to stand in judgment, and that the receiver was competent to make such application to sell and to prosecute the same and stand in judgment;

"3. In holding that the Supreme Court of Louisiana and the state courts had jurisdiction *ratione materia*, and in denying the exclusive jurisdiction of the United States courts;

"4. That the court further erred in not setting aside the

judgment of the lower state court and rejecting the demand of the defendant in error."

The claim presented in the trial court and in the Supreme Court, as expressed by the latter, was "that it was necessary for the receiver to aver and prove he was authorized by the Comptroller of the Currency, United States Treasury Department, to institute the present action and to sell at public auction the collaterals pledged to secure the indebtedness declared on, and that without this authorization the judgment recovered cannot stand."

On that contention both courts passed. It was discussed at length by the Supreme Court, and was held to have "no sufficient basis of fact to rest upon." This conclusion was based on the ruling in *Bank* v. *Kennedy*, 17 Wall. 19. We think it was correctly based on that decision.

Section 5234 of the Revised Statutes enacts:

"That on becoming satisfied, as specified [in this act], that any association has refused to pay its circulating notes as therein mentioned, and is in default, the Comptroller of the Currency may forthwith appoint a *receiver*, and require of him such bond and security as he shall deem proper, who, *under the direction of a Comptroller*, shall take possession of the books, records and assets of every description of such association, *collect all debts, dues and claims belonging to it*, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order may sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders [provided for by the twelfth section of this act]; and such receiver shall pay over all money so made to the Treasurer of the United States, subject to the order of the Comptroller," etc.

This section was construed in *Bank* v. *Kennedy*, and Mr. Justice Bradley, speaking for the court, after distinguishing between stockholders and ordinary debtors of the national bank, which was the ground of decision in *Kennedy* v. *Gibson*, 8 Wall. 498, 506, said:

" The language of the statute authorizing the appointment of a receiver to act *under the direction of the Comptroller* means no more than that the receiver shall be *subject* to the direction of the Comptroller. It does not mean that he shall do no act without special instructions. His very appointment makes it his duty to collect the assets and debts of the association. With regard to ordinary assets and debts no special direction is needed; no unusual exercise of judgment is required. They are to be collected of course; that is what the receiver is appointed to do. We think there was no error in the decision of the court below. on these points, and that the action was properly brought by the receiver."

Expressing what it was necessary for the receiver to do to collect the assets of the bank, the Supreme Court of Louisiana said:

" The receiver here could not sell the collaterals in his hands without obtaining the order of a court of competent jurisdiction, and this order must fix the terms of the sale.

" The object of this suit was to obtain such an order. The civil district court of the parish of Orleans is a court competent to grant the order. It did so."

The other point now made, to wit, that the state courts had no jurisdiction of the petition of the receiver because under paragraphs 3, 10 and 11 of section 629, and the proviso of section 4 of the act of Congress adopted August 13, 1888, the courts of the United States had exclusive jurisdiction, was not made in the trial court nor in the Supreme Court at the original hearing. It was made for the first time in the brief filed for rehearing. To maintain its availability to plaintiff in error it is claimed that " if the state courts were utterly without jurisdiction, it was their duty to dismiss the proceedings *ex proprio motu*, and such is the jurisprudence of Louisiana. Where there is a want of jurisdiction *ratione materia*, it is not too late to suggest or raise it on rehearing or at any time."

Whether such was the duty of the state courts and what questions could be suggested or raised on rehearing, the Supreme ·Court was undoubtedly competent and able to decide. For this court we need only say that we have decided too often to make

it necessary to do more than announce the rule, that to render a Federal question available on writ of error from a state court it must have been raised in the case before judgment, and cannot be claimed for the first time in a petition for rehearing. *Meyer* v. *Richmond*, 172 U. S. 82, 92 and cases cited.

As there is no error in the record, judgment is

*Affirmed.*

MR. JUSTICE BROWN took no part in this decision.