FOURNET, Justice.
 

 The late Bernard McCloskey intervened in the liquidation of the Hibernia Bank & Trust Company seeking to be released from his obligation as endorser to pay a certain promissory note executed by John T. Gibbons, Jr., for the principal sum of $8,500. The liquidators of the bank answered denying that the intervenor was entitled to the relief sought and further averred that this note was lawfully pledged and delivered to the Reconstruction Finance Corporation by the bank for a valuable consideration and before maturity. The Reconstruction Finance Corporation also answered denying that the intervenor was entitled to such relief and, in reconvention, prayed for a judgment against the intervenor for the full amount due on the note, including principal, interest, attorney fees, and costs. This appeal is prosecuted from a judgment dismissing the intervention and granting the Reconstruction Finance Corporation the judgment prayed for.
 

 The trial judge, in his written reasons, for judgment, has given us an accurate-statement of the facts and, in our opinion, has properly disposed of the issues involved. We therefore quote with approval from the opinion as follows:
 

 “The late John T. Gibbons, Jr., was indebted to the Hibernia Bank & Trust Company, now in liquidation, on three promissory notes, one dated December 5, 1932, due ninety days after date for $23,833.33, bearing interest at the rate of six per cent per annum from October 31, 1932; a second dated January 16, 1933, in the sum of $8,500, payable ninety days after date and bearing interest at the rate of six per cent per annum from December 31, 1932; and a third dated January 23, 1933, due ninety days after date for $1350, bearing interest at the rate of eight per cent per annum from maturity.
 

 “The note for $23,833.33 was secured by certain collateral, and the note for $8500 was secured by the indorsement of the late-Bernard McCloskey. The note indorsed by McCloskey contained a provision to the-effect that it ‘shall be secured by a pledge of all securities and/or property of every nature whatsoever’ in the possession of the bank, belonging to the parties to the note.. The note for $1350 was not secured, but contained a pledge agreement similar to that in the $8500 note.
 

 “All of these notes were pledged by the-Hibernia Bank & Trust Company to the Reconstruction Finance Corporation to secure a loan made to the bank.
 

 “Gibbons, the maker of the notes, died insolvent on January 26, 1934, and his sue-
 
 *895
 
 cession has been under administration in this Court.
 

 “Availing themselves of the terms of the pledge, the Liquidators of the bank, with the approval of the Reconstruction Finance Corporation, transferred the stock securing the $23,833.33 note into the name of a nominee in order to facilitate the payment of the dividends, all of which were duly credited to Gibbons’ indebtedness on that note.
 

 “Thereafter, on April 30, 1936, on the petition of the administrator, an order was secured in the Succession of Gibbons authorizing the administrator to waive any interest in the collateral, and to consent to its transfer into the name of any nominee of the bank. The Liquidators of the bank and the Reconstruction Finance Corporation were not parties to the petition upon which this order was rendered. When they transferred the certificates of stock into the name of the nominee the Liquidators of the bank stamped across the face of the certificates a statement to the effect that the transfer did not represent a sale or change of ownership. Thereafter, again availing themselves of the provisions of the pledge agreement, the Liquidators of the bank, with the approval of the Reconstruction Finance Corporation, sold the stock at public auction and applied the proceeds of sale against the $23,833.33 note. There is still a substantial balance due on this note. No order of Court was applied for or secured in the liquidation proceedings authorizing this sale.
 

 “The indorser of the note, Bernard Mc-Closkey, now deceased, filed an intervention in these proceedings in which he alleged that the ‘unwarranted ex parte assignment in globo by the Succession of Gibbons to the Liquidators’ ‘operated as a payment of the indebtedness’ of Gibbons and had the effect of discharging the intervenor as a solidary codebtor, under Article 2203 of the Civil Code. In the alternative, he alleged that the collateral was pledged to the payment of all three notes, and that he was entitled to an appraisal of and an accounting for the full value of the collateral, and the allocation of a certain portion of it to the note which he indorsed.
 

 “The Reconstruction Finance Corporation reconvened and asked for judgment against McCloskey for the full amount of the $8500 note which he had endorsed. Mc-Closkey subsequently died, and the executor of his succession has been'made a party to the proceedings.
 

 “The Succession of McCloskey contends that the order secured in the Succession of Gibbons had the effect of discharging the liability of Gibbons as comaker, and as there was no reservation of rights against McCloskey, he is discharged also.
 

 “It is clear, however, that the Liquidators of the bank at no time accepted the stock in payment of the note and at no time released the Succession of Gibbons. The order in that succession was an ex parte one to which the Liquidators of the bank and the Reconstruction Finance Corporation were not parties. When the Liquidators of the bank transferred the stock into the
 
 *897
 
 name of a nominee to facilitate payment of dividends, they made it clear that they were not releasing anybody.
 

 “It is also contended that when the bank sold the stock at public auction, this amounted to a tortious conversion for the reason that no order was secured in these liquidation proceedings authorizing this sale, under Section 1 of Act 300 of 1910. In my opinion no such order was necessary. The liquidation of banks in Louisiana is statutory and not judicial in character. The State Bank Commissioner and the Liquidators have full authority to administer and conduct the liquidation proceedings, and only in certain rare instances are they required to secure the authority or approval of a court of justice. It is true that they are required to secure an order of Court to sell the bank’s property, but this stock was not the bank’s property. The bank merely held the collateral in pledge and it was always the property of the pledgor. The pledgor signed an agreement authorizing the bank to sell the collateral, and in making the sale in accordance with the terms of this agreement, the bank was selling the pledgor’s property and not the bank’s property. A liquidator of a bank needs no order of Court to receive payment of an obligation, nor does he need an order of Court to avail himself of the right given to the bank under a pledge agreement to dispose of the pledgor’s property.
 

 “Furthermore, even if failure to secure an order authorizing the sale had the effect of making the transfer a tortious conversion, which required the Liquidators to account for the maximum value of the securities up to the date of the trial, that would avail the intervenor nothing; for there would still be an insufficient credit to extinguish the $23,833.33 note.
 

 “It is also contended that the collateral was equally pledged to the payment of all three notes and that the proceeds of the sale, therefore, should be pro rated. The collateral was, as a matter of fact, specifically pledged to the payment of the $23,833.33 note.
 

 “It would be obviously inequitable to hold that the bank, which considered itself amply secured by the collateral, when it made the first loan, and required the indorsement of McCloskey when it made the second loan, should now be forced, by virtue of the general pledge clause in the second note, to release some of the collateral, securing the first note, to the second obligation. Furthermore, the $23,833.33 note has been longest due and ‘if the debts be of like nature, the imputation is made to the debt which has been longest due * * C. C. 2166.”
 

 Counsel for the appellant have seriously argued in this court, both orally and in brief, that at the time they presented their case in the lower court they were unaware of the decision of this court in the case of Richardson v. Turner, 52 La.Ann. 1613, 28 So. 158, affirmed by the Supreme Court of the United States in 180 U.S. 87, 21 S.Ct. 295, 45 L.Ed. 438; and that the decision of this court in the case of In re Hibernia Bank & Trust Co., 203 La. 195, 13 So.2d 833, had not been handed down, although both of them uphold their contention that the sale of the collateral securing the $23,833.33 note without judicial au
 
 *899
 
 thorization was an absolute nullity; further, that they were not aware of the holding in the case of New England Mutual Life Insurance Co. v. Randall, 42 La.Ann. 260, 7 So. 679, to the effect that a surety is released of his obligation when the principal receives from the debtor all of the property he possesses and converts it to his own use without the consent of the surety, thus placing the property behind the surety's reach and depriving him of his right of subrogation. As ah alternative argument counsel contend that the Gibbons notes were fully liquidated by the money received by the bank in liquidation from the dividends and sale of the collateral since these amounts more than aggregated the principal amount of all of the three notes together with the interest that had accrued as of the date of the admitted insolvency of the Succession of Gibbons, from which date no additional interest could be charged under Article 2054 of the Revised Civil Code; Section 1812 of the Revised Statutes; Spears v. Creditors, 40 La.Ann. 650, 4 So. 567; C. T. Patterson Co. v. Port Barre Lumber Co., 136 La. 60, 66 So. 418; Act No. 300 of 1910 and Vol. 3 of Collier on Bankruptcy (14th Ed.) page 1836.
 

 As pointed out by the trial judge, banks in liquidation are creatures of legislative enactment, not of judicial pronouncement, and while the legislation creating them does require that judicial authority or approval be secured before any property belonging to such banks be sold, the collateral securing the $23,833.33 note was not the property of the bank in liquidation, but the property of the debtor who pledged it to secure such note (Article 3166 of the Revised Civil Code), and the dividends flowing from such pledged collateral form a part of that pledge, although they remain in the hands of the pledgee, rendering the pledgee either liable to account for them to the pledgor or to apply them toward the reduction of the obligation the collateral itself secured (Article 3165 and 3168) and the pledgor may authorize the pledgee to sell or otherwise dispose of the pledged collateral “in such manner as may be agreed upon by the parties without the intervention of courts of justice.” Article 3165.
 

 In the instant case the $23,833.33 note contained the provision that the amounts due on the note “are and shall be secured by the pledge of the securities * * * listed and described on the reverse hereof,” as well as the further provision that “In case of non-payment of this note at maturity, or when otherwise due as above provided, said bank is hereby irrevocably authorized to sell any securities and/or any property as aforesaid, or any part thereof at public or private sale * * * without recourse to judicial proceedings and without demand for payment or notice or advertisement of sale and said bank may be the purchaser of any and all property so sold and hold the same thereafter in its own rights absolutely free from any claim or right of redemption which is hereby expressly waived and released.” There can be no doubt, therefore, that the bank in liquidation was within its legal rights when it collected the dividends flowing from this collateral pledged to secure the $23,833.33 note, sold such collateral without court authorization by way of judicial foreclosure, and ap
 
 *901
 
 plied the proceeds derived from both the dividends and the sale to the payment of the debt. Articles 3170 and 3172 of' the Revised Civil Code.
 

 A careful study and analysis of the Turner case, which counsel contend is decisive of the issues in this case, shows that the facts presented there were not the same as those in this case for it does not appear that the creditor in the Turner case was authorized in the act of pledge or otherwise to sell the collateral securing the obligation and it is; therefore, inapposite. We fail to appreciate what bearing the Hibernia Bank in Liquidation case has on this case, and counsel have not enlightened us in this respect other than to cite the case as authority for their contentions.
 

 A mere reading of the Randall case will show that it also has no application in this case, for the facts there were not comparable to those in the instant case. In the Randall case the company was suing its agent and the sureties on his bond to recover certain deficits of the agent and the court held that the sureties were released from their obligation because the company received and accepted from its agent all of the property he possessed, administered it as its own, and disposed of and converted the proceeds thus realized to its own use without the knowledge or consent of the sureties, thus by its own act changing the contract of the sureties and depriving them of their right of subrogation. In the instant case there has been no voluntary cession of the property of Gibbons. The stock pledged by Gibbons to secure the $23,833.33 note was placed in the name of a nominee merely for the purpose of facilitating, the collection of the dividends derived therefrom and this intention was clearly .evidenced by a notation to that effect written across the stocks themselves. In addition, McCloskey was given notice of the proposed sale of the collateral and took no steps to protect such rights of subrogation as he may have had.
 

 We need say nothing more about the last and alternative argument of coun sel for the appellant than that the authorities relied on do not support this argument and are not otherwise pertinent. According to the tenor of the note, the collateral was pledged to secure not only the payment of the note in principal and interest, but also the payment of the cost and attorney fees in the event judicial action was necessary to effect its collection. As attorney, vice-president, and director of the then functioning bank, as well as one of the directors of the D. H. Holme's, Ltd., a company issuing a great many of the stocks found in the collateral pledging this $23,833.33 note, Mr. McCloskey had full knowledge of the fact that all of such collateral secured this particular note when he endorsed, without asking any security therefor, the $8,500 note. As the trial judge has pointed out, it would not only be extremely unfair but also inequitable to permit the proceeds derived from this collateral — inadequate to fully liquidate all of the amounts due on the $23,833.33 note — to be pro-rated among the three notes in order that the amount due on the note executed solely upon the endorsement of Mr. Mc-Closkey, and unsecured in any other respect, be reduced.
 

 
 *903
 
 For the reasons assigned, the judgment appealed from is affirmed, at appellant’s cost.
 

 O’NIELL, C. J., does not take part.
 

 ODOM, J., absent.