## BANK *v.* KENNEDY.

1. A receiver of a national bank, appointed by the comptroller of the currency under the 50th section of the National Banking Act, may sue for demands due the bank in his own name as receiver, or in the name of the bank.
2. A receiver, in order to sue for an ordinary debt due the bank, is not obliged to get an order of the comptroller of the currency. It is a part of his official duty to collect the assets.
3. The case of *Kennedy* v. *Gibson* (8 Wallace, 506), distinguished from this case; as having been a suit against the stockholders of the bank, which required the direction of the comptroller.
4. Conversations occurring during the negotiation of a loan, or other transaction, as well as the instruments given or received, being pa. of the *res gesta*, are competent evidence to show the nature of the transaction, and the parties for whose benefit it was made, where that fact is material. They are not adduced for the purpose of proving facts stated or affirmed in the conversations, but to prove the conversations themselves as facts; and are not hearsay, but original evidence.
5. Where the cashier of a bank effects a loan, and it becomes material to ascertain whether it was made for his own account or for the use of the bank, evidence of the negotiation and circumstances may be given for that purpose, whatever may be the form of the securities given or received, when the latter are introduced only collaterally in the cause.
6. When papers or documents are introduced collaterally in the trial of a cause, the purpose and object for which they were made, and the reason why they were made in a particular form, may be explained by parol evidence.

7. The purpose or quality of an act may be stated by a witness who was present and cognizant of the whole transaction, as whether the delivery of money by one man to another was by way of payment or otherwise.

8. What one party to a contract understands or believes is not to govern its construction unless such understanding or belief was induced by the conduct or declarations of the other party.

9. Evidence or statements of fact not contained in the bill of exceptions, nor made a part thereof, though appended thereto, will not be regarded by the court.

ERROR to the Supreme Court of the District of Columbia.

Kennedy, receiver of the Merchants' National Bank, brought suit in the court below against the National Bank of the Metropolis, to recover the balance alleged to be due on a check for $50,000, dated May 1st, 1866, drawn by one Robinson on the said Bank of the Metropolis, in favor of the said Merchants' Bank, and duly presented for payment. On presentation of the check the Bank of the Metropolis admitted its obligation to pay it, but as part payment thereof, delivered to the messenger of the Merchants' Bank a note of C. A. Sherman, cashier of that bank, for $20,000, dated February 27th, 1866. The Merchants' Bank declined to receive this note as payment, and sent it back demanding the cash. But the Bank of the Metropolis refused to take back the note, insisting that although it was signed by Sherman, individually, it was given for account of the Merchants' Bank, and for a loan made to *it*. The principal controversy in the case arose upon the question whether the note was given by Sherman on his own account or on account of the Merchants' Bank.

Certain preliminary questions, however, were raised with reference to the authority of the receiver to bring the action.

Verdict and judgment, under the rulings as to evidence, and under the charge, were given for the plaintiff; and the defendant, the Bank of the Metropolis, brought the case here. This court disposed of the different points raised, considering them in the order of the several assignments of error.

*Messrs. Hubley Ashton and W. D. Davidge, for the plaintiffs in error; Messrs. R. T. and W. M. Merrick, contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

The first and second errors assigned are that the plaintiff, who is a receiver appointed by the comptroller of the currency under the fiftieth section of the National Banking Law, is not entitled to bring suit without the authority or direction of the said comptroller—which is not alleged or shown in this case; and that the action cannot be maintained by the receiver in his own name as such.

These objections are based upon the language of the act referred to, as well as the general nature of the receiver's office. The statute* enacts:

"That on becoming satisfied, as specified in this act, that any association has refused to pay its circulating notes as therein mentioned, and is in default, the comptroller of the currency may forthwith appoint a *receiver*, and require of him such bond and security as he shall deem proper, who, *under the direction of the comptroller*, shall take possession of the books, records, and assets of every description of such association, *collect all debts, dues, and claims belonging to such association*, and upon the order of a court of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders provided for by the twelfth section of this act; and such receiver shall pay over all money so made to the treasurer of the United States, subject to the order of the comptroller," &c.

We have already decided in the case of this very receiver that he may bring suit in his own name or use the name of the association.† The subject was also lately discussed in the case of *The Bank of Bethel* v. *The Pahquioque Bank*,‡ and the same views were held; the action in that case being brought against the insolvent bank. This disposes of the question as to the legal right of the receiver to sue.

It remains, therefore, to determine whether it is necessary

* Section 50, 13 Stat. at Large, 114.
† Kennedy *v.* Gibson, 8 Wallace, 506.          ‡ 14 Wallace, 383.

for the receiver, before bringing suit in an ordinary case of a debt or claim due the bank, to have the order of the comptroller for that purpose. In the case already referred to, the receiver had instituted a suit in equity against some of the stockholders of the bank for the purpose of charging them with the personal liability prescribed by the twelfth section of the act; and we held that he had no right to do this without the comptroller's direction. But it will be perceived that that was a very special case, out of the ordinary course, and one which involved an important consideration of the policy to be pursued. Stockholders are not ordinary debtors of the bank, but are rather in the light of creditors, their stock being regarded as a liability. They are entitled to all the surplus that remains, if any should remain, after the payment of the debts. They are only conditionally liable for those debts after all the ordinary resources of the bank have been exhausted, and they ought not to be prosecuted without due regard to the circumstances of the case. The determination on the part of those charged with winding up the affairs of the bank, to resort to this ultimate remedy, requires the exercise of due consideration; and a receiver ought not to take it upon himself to decide so important a question without reference to the comptroller under whose direction he acts. Although it is his duty to collect the assets of the institution he does not distribute them, and cannot ordinarily know, without reference to the comptroller, whether a prosecution of the stockholders will be necessary or not. Hence our decision in the case of *Kennedy* v. *Gibson* cannot fairly be quoted for the government of a case like the present, which is a suit to recover an ordinary debt.

The language of the statute authorizing the appointment of a receiver to act *under the direction of the comptroller*, means no more than that the receiver shall be *subject* to the direction of the comptroller. It does not mean that he shall do no act without special instructions. His very appointment makes it his duty to collect the assets and debts of the association. With regard to ordinary assets and debts no

special direction is needed; no unusual exercise of judg-. ment is required. They are to be collected of course; that is what the receiver is appointed to do. We think there was no error in the decision of the court below on these points, and that the action was properly brought by the receiver.

We next come to the special ground of litigation in this case.

The cause was tried before a jury, and evidence was adduced pro and con upon the principal subject of controversy, namely, whether the note given by Sherman to the defendants, on the 27th of February, was given on his individual account for a loan made to him personally, or whether it was given on the account of the Merchants' Bank (of which he was cashier) for a loan made to it. We are called upon to decide upon the legality of certain rulings as to evidence which took place during the trial, and upon the correctness of the charge to the jury.

After the plaintiff had proved the presentation of the check, on the 1st of May, and the payment of it to the messenger of the Merchants' Bank, in certain moneys and securities, including the note in question; and had proved by Sherman, the cashier of the Merchants' Bank, that the defendants refused to take the note back and pay the cash instead; he proceeded to prove by Sherman the circumstances under which the note had been given to the defendants, the substance of which was, that on the 27th of February he applied to Hutchinson, cashier of the defendants, for a loan to himself of $20,000, to enable him to purchase some stock in the Merchants' Bank, and that this note was given for that loan, with the certificate of the stock attached as collateral; and that he received therefor two drafts for $10,000 each on Baltimore and Philadelphia banks, payable to C. A. Sherman, cashier; that he indorsed them as cashier, and that the proceeds, when paid, went to the credit of the Merchants' Bank. The drafts being produced in evidence, the plaintiff's counsel then asked the witness what took place, when the drafts were about to be drawn, between him and Hutchinson in

regard to the form of the drafts. This evidence was objected to, was allowed, and an exception taken, which is the subject of the third assignment of error.

It is argued by the counsel for plaintiffs in error that this evidence was calculated to explain or vary the legal effect of the drafts themselves. We do not think so. Those drafts are not sued on in this action. They are introduced merely as part of the *res gesta* of the loan, and the conversation of the parties on the subject of the drafts was also a part of that *res gesta*. They equally constituted parts of the transaction. The witness might have preferred to receive the drafts in that form; he might have preferred to receive drafts payable to any third person. Evidence as to the reason why they were made in one form rather than another does not in the least vary or contradict the drafts themselves. As the form of the drafts might confuse the jury, the plaintiffs had a clear right to explain how they came to be made as they were. The fact in question was the loan. The circumstances of the negotiation constituted the *res gesta* of the loan. The drafts were one of those circumstances; the conversation of the parties was another. Evidence of the reason why a loan was made in particular funds or securities, instead of cash, is perfectly competent where it will tend to elucidate the nature of the transaction, when that is the question at issue. The question here was, whether the loan was made to Sherman or to the bank. The note given for the repayment of the loan was given by Sherman individually. The drafts in which he received the loan were made payable to him as cashier. Neither the one nor the other of these documents can prevent the parties from showing, as a matter of fact, to whom the loan was really made. The defendants were endeavoring throughout the cause, contrary to the form of the note, to show that it was really the obligation of the bank, and that the loan was made to the bank. This they had a clear right to do, as the plaintiff had an equally clear right to show the contrary. The principle which governs such cases was explained and enforced by

this court in the case of *Baldwin* v. *The Bank of Newbury.**
There was no error in the admission of this evidence.

. The next exception, which is the subject of the fourth
assignment of error, related to evidence of a similar char-
acter. Sherman, on his cross-examination, stated that he
had learned about the stock being for sale from Mr. Huyck,
the president of the Merchants' Bank, without knowing
·whose stock it was until he had made arrangements for his
loan, and went to Huyck for the certificate of stock, when
he found that it belonged to one English, a director of the
bank. He was then asked, on re-examination by the plain-
tiff, what Huyck said at the time of delivering him the cer-
tificate, as to the sale, delivery, and price of the stock. To
this the defendants' counsel objected, but the question was
allowed.

We think that in this also there was no error. The ob-
ject of the cross-examination evidently was to show that the
bank, through its president, was concerned in the purchase
of the stock, and that; therefore, the loan must have been
made on its account. As the witness's purchase of the stock
was made through Huyck, the conversation between them
when the purchase was made was part of the *res gesta* of the
purchase—part of the transaction itself. For that reason it
was clearly competent. Like the loan, the purchase of the
stock was a fact accomplished by conversations and acts.
In proving this fact these conversations and acts were com-
petent evidence. Conversations, in such cases, are not ad-
duced so much to prove ulterior facts stated therein as to
prove the conversations themselves as facts constituting part
of the transaction. Hence they are not hearsay, but original
evidence.

It further appeared from Sherman's testimony that when
he had received the two drafts from Hutchinson he delivered
them to Huyck, the president of the Merchants' Bank, who
delivered them to English upon his entering the bank a few
minutes afterwards, and that English handed them to the

* 1 Wallace, 240, 241.

receiving teller. The plaintiffs' counsel then asked the witness for what purpose the drafts were delivered to English. The allowance of this question (which was objected to) is the fifth error assigned. Its propriety is evinced by the answer to it, which was that the drafts were delivered to English in payment of the stock. The position of the parties is material. It had appeared by Sherman's testimony that he was the purchaser of the stock; that the drafts belonged to him, having been borrowed by him to pay for the stock; that he had purchased it through Huyck, but that the stock belonged to English, who was the vendor; that he, the witness, handed the drafts to Huyck on his return from the defendants' bank, and that Huyck, a few minutes after, handed them to English. Surely one of the principals in this transaction, under these circumstances, was competent to testify as to the purpose for which the drafts were delivered to English. If the declarations of a man when doing an act may be proved in his own behalf to show the purpose and intent with which it was done, as numerous authorities show,* it must be competent for a party to the transaction, cognizant of all the circumstances, and a witness of the act, to state its purpose, being subject, of course, to cross-examination. The manner and form in which an act is done, being one of several acts concurring to one purpose or transaction, indicate even to a mere observer, by shades of circumstance often difficult to analyze, what was the character of the act, or the intent and purpose with which it was done.

It further appearing, on Sherman's cross-examination, that the drafts were not indorsed by him until after English had delivered them to the receiving teller, the defendants objected to Sherman's being asked the reason why they were not indorsed when given to English. The allowance of this question was made the ground of another exception, and is the subject of the sixth assignment. We can see no objection to the question. If the fact that the drafts were not

---

* Starkie on Evidence, 51, 87; 1 Greenleaf on Evidence, § 108.

indorsed when delivered to English is of any consequence, the reason why they were not indorsed would seem to be of equal consequence. It might have been an oversight. It might have been something else. Whatever it was the reason should go with the fact, so that the latter might not have a greater effect on one side or the other than it ought to have. Facts proved by way of circumstantial evidence, may always be explained by the party against whom they are adduced.

Further evidence was given in the case tending to show that the loan was entered in a memorandum-book kept by the defendants, as made on the note of Sherman individually and not as cashier; and that the amount of the two drafts was placed to the credit of English on the books of the Merchants' Bank, and that he checked out the same; and that Sherman was credited for the amount of dividend due on the stock. A statement of further evidence, containing the testimony of Hutchinson and Frissell, the cashier and assistant cashier of the defendants, materially conflicting with that of Sherman, is annexed to the bill of exceptions, but not made a part of it, and, therefore, cannot properly be taken into consideration.

The evidence being closed, the respective parties prayed the court to give certain instructions to the jury. The seventh error assigned is that the court granted the plaintiffs' first prayer for instructions, which was in substance that if the jury found, from the evidence, that the note of Sherman was passed to and received by the defendant as the evidence of money or negotiable drafts lent to him, and that the sole consideration on which the loan was made was the personal responsibility of Sherman on said note and the collateral stock, then the said Merchants' Bank was in no way chargeable with the note, nor could it be legally tendered to them by the defendant as part payment of Robinson's check, unless the jury should find from the evidence that said loan was really made to Sherman in behalf of the

Merchants' Bank, and the proceeds thereof went to, its use and benefit. This instruction was given, subject to the qualifications contained in the first instruction prayed for by the defendant, which were, in effect, that if the contract of loan was really between the two banks, then the note ought to be allowed as part payment of the check. The substance and effect of the instruction, and indeed of the whole charge, was, that if the jury believed that the loan was made to Sherman for the Merchants' Bank, they must find for the defendants; but if made to him on his own behalf they must find for the plaintiff. This seemed to be the pole star which guided the court in all its answers to the various instructions applied for. And we think the court was clearly right. The case seems to have been very fairly put to the jury on this cardinal point, and it would be a useless task to make a critical examination of each request for the purpose of showing the truth of this proposition.

The tenth error assigned is the refusal of the court to charge that the plaintiff could not recover unless the jury found that, before suit brought, the note of Sherman and the collateral certificate of stock attached thereto were tendered to the defendants. Why should these papers be again tendered? They were once tendered and refused. The objection is not even plausible.

The eleventh assignment complains of the refusal to charge that the Merchants' Bank was liable for the loan, if it had been in the habit of borrowing money of the defendants by Sherman, as cashier, and if the defendants *believed* that the loan in question was for the benefit of the Merchants' Bank. The evident answer to this assignment is, that the *belief* of one party to a transaction is not the criterion by which the rights of the parties are to be governed, unless the other party, by his conduct or declarations, induced that belief. The naked fact of previous loans being made to the Merchants' Bank, through Sherman as cashier, could not, as a matter of law, be adjudged as sufficient cause for such a be-

lief on the part of the defendants in view of the other evidence in the cause.

The eighth, ninth, and twelfth errors are founded upon the refusal of the court to instruct the jury that the Merchants' Bank was bound by an alleged settlement of the controversy, if they believed certain evidence which does not appear upon the bill of exceptions, namely, to the effect that the president of the Merchants' Bank, on the day after the presentation of the check sued on, in a conversation with Hutchinson, acceded to his view of the subject and allowed Sherman's note as part payment of the check. It appears that the court granted the two former instructions prayed for, with this qualification, namely, *provided* the loan was originally made between the defendant and the Merchants' Bank, and not with Sherman, or that the proceeds went to the benefit of the bank as part of its assets or property. As the bank went into bankruptcy within forty-eight hours after this supposed settlement, the qualification was probably not an unreasonable one. But as the bill of exceptions before us does not contain a particle of evidence on the subject, it is unnecessary to decide this question.

These being all the errors assigned, the judgment must be

AFFIRMED.