**NAGLE et al. v. O'CONNOR, Comptroller of the Currency, et al.**

**TOBIAS et al. v. SAME.**

Nos. 5949, 5950.

Circuit Court of Appeals, Third Circuit.

March 10, 1937.

BUFFINGTON, Circuit Judge, dissenting.

———◆———

George Eves, Stevens & Lee, and Edward D. Trexler, all of Reading, Pa., and W. Bradley Ward and Lemuel B. Schofield, both of Philadelphia, Pa., for appellants.

Brice Clagett and Charles E. Wainwright, both of Washington, D. C., and Charles W. Matten and Harry R. Matten, both of Reading, Pa., for appellees.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

These cases involve the validity of a levy by the Comptroller of an assessment of 100 per cent. on the stockholders of two national banks, the Penn National Bank and the Reading National Bank of Reading, Pa., hereinafter called the Penn Bank and the Reading Bank. They involve the same question of law and were tried together in the District Court and argued together here.

The real question is whether or not in making the assessment the Comptroller transcended the power and authority conferred upon him by Congress.

On February 17, 1933, the Penn Bank and the Reading Bank entered into an agreement with the Farmers National Bank & Trust Company of Reading, Pa., hereinafter called the Farmers Bank, wherein the Penn Bank and the Reading Bank agreed to consolidate with and under the name of the Farmers Bank. The Penn and Reading Banks were forthwith to transfer all of their assets to the Farmers Bank upon the condition that it would assume all liabilities of every kind of the Penn and Reading Banks except liabilities of stockholders as such. The Penn and Reading Banks immediately ceased doing a banking business and transferred all of their assets, which are alleged to have been more than enough to pay their liabilities, to the Farmers Bank which, however, did not pay, as it had agreed to do, the liabilities of the other two banks, but went on conducting a banking business with the combined assets of the three banks until March 18, 1933, when William M. Bertolet was appointed conservator for it. He took possession of the assets of the Farmers Bank which included those coming from the Penn Bank and the Reading Bank, and carried on the banking business of the Farmers Bank, commingling all the assets of the three banks and using them indiscriminately to discharge the obligations of the Farmers Bank, until October 10, 1933, when the Comptroller "abrogated" and set aside the contract between the banks of February 17, 1933, and attempted to allocate among the three banks the assets then belonging to the Farmers Bank. He certified on that day that the Penn Bank and the Reading Bank were unable to transact and carry on business and appointed Bertolet conservator for each of them.

He continued as conservator for each of the three banks until October 27, 1934, when the Comptroller certified that each of the three banks was insolvent and unable to pay its just and legal debts and appointed receivers for each of them.

On January 15, 1935, he levied an assessment of 100 per cent. of their individual liability upon the stockholders as follows:

"To All Whom It May Concern: Whereas, upon a proper accounting by the Receiver heretofore appointed to collect the assets of The Penn National Bank and Trust Company, of Reading, Pennsylvania, and upon a valuation of the uncollected assets remaining in his hands, it appears to my satisfaction that in order to pay the debts of such association it is necessary to enforce the individual liability of the stockholders therefor to the extent hereinafter mentioned, as prescribed in section 5151 and 5234 of the Revised Statutes of the United States [12 U.S.C.A. §§ 63, 192] section 1, c. 156, Act of June 30, 1876 [12 U.S.C.A. § 191], and section 23, Act ap-

938

proved December 23, 1913, known as Federal Reserve Act [12 U.S.C.A. § 64],

"Now, therefore, by virtue of the authority vested in me by law, I do hereby make an assessment and requisition upon the shareholders of the said Penn National Bank and Trust Company, of Reading, Pennsylvania, for One Million ($1,000,000.) Dollars, to be paid by them on or before the 23rd day of February, 1935, and I hereby make demand upon each and every one of them for the par value of each and every share of capital stock of said association held or owned by them, respectively, at the time of its failure; and I hereby direct Wm. H. McGowan, the Receiver heretofore appointed, to take all necessary proceedings, by suit or otherwise, to enforce to that extent the said individual liability of the said shareholders."

■ The crux of this case centers in the right of the Comptroller to abrogate and set aside the contract in accordance with which the Penn and Reading Banks conveyed their assets to the Farmers Bank, in consideration for which the Farmers Bank agreed to pay the obligations of the other two banks. There is no allegation anywhere that the banks were then, February 17, 1933, insolvent though they may have been in imminent danger. It is nowhere alleged that the directors of the banks in entering into that agreement were not acting in good faith and for the best interest of all of the banks. There is no hint that the agreement was in any way fraudulent.

Under these circumstances, it was beyond the power of the Comptroller, eight months afterward by mere ipse dixit, to set aside the contracts between the banks and proceed as though they had never been made. Wannamaker v. Edisto National Bank of Orangeburg (C.C.A.) 62 F.(2d) 696. Congress did not give him such power. No principle of law, which, in our opinion, authorizes the Comptroller to do this has been cited by counsel or the court below.

■■ The authority to levy an assessment upon the stockholders is contained in section 192, 12 U.S.C.A., the National Bank Act, which provides that: "Such receiver, under the direction of the comptroller, shall take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders. Such receiver shall pay over all money so made to the treasurer of the United States, subject to the order of the comptroller, and also make report to the comptroller of all his acts and proceedings."

The Comptroller has power to decide when and to the extent it is necessary to enforce the liability of stockholders. These are matters within his administrative discretion and his determination of these questions is ordinarily conclusive and may not be judicially reviewed. Kennedy v. Gibson et al., 8 Wall. (75 U.S.) 498, 505, 19 L.Ed. 476. But in reaching his conclusion as to this necessity, he may not act arbitrarily, capriciously, and in entire disregard of the provisions of the statute. Stockholders are only conditionally liable for the debts of the bank "after all the ordinary resources of the bank have been exhausted." National Bank v. Kennedy, 17 Wall. (84 U.S.) 19, 22, 21 L.Ed. 554. In United States ex rel. Citizens' Nat. Bank v. Knox, 102 U.S. 422, 425, 26 L.Ed. 216, the court said: "In the process to be pursued to fix the amount of the separate liability of each of the shareholders, it is necessary to ascertain, 1, the whole amount of the par value of all the stock held by all the shareholders; 2, the amount of the deficit to be paid after exhausting all the assets of the bank; 3, then to apply the rule that each shareholder shall contribute such sum as will bear the same proportion to the whole amount of the deficit as his stock bears to the whole amount of the capital stock of the bank at its par value."

■ It is the policy of the government to wind up the affairs of insolvent banks speedily and justly, and notwithstanding the language in the above case and similar language in other cases, the Comptroller is not obliged to wait until all the assets of an insolvent bank are literally "exhausted" before he determines the necessity of enforcing individual liability of the stockholders. Miller v. Stock et al. (C.C.A.) 65 F.(2d) 773, 90 A.L.R. 1061; Kennedy v. Gibson, 8 Wall. (75 U.S.) 498, 19 L.Ed. 476; Studebaker v. Perry, 184 U.S. 258, 22 S.Ct. 463, 46 L.Ed. 528; Korbly v. Springfield Institution for Savings, 245 U.S. 330, 333, 38 S.Ct. 88, 62 L.Ed. 326. If he were compelled

thus to wait, it would delay the winding up of banks too long and this might cause great loss to creditors of the banks because many stockholders might in the meantime become insolvent or remove their property beyond the reach of the Comptroller.

But no case has gone so far as to hold that the Comptroller may entirely disregard the statutory provisions for winding up an insolvent bank and arbitrarily, and in violation of law, enforce the individual liability of stockholders. But this is exactly what the Comptroller did in this case. He abrogated and set aside valid contracts between the banks and did not take into account, when he made the levy, the contract obligation of the Farmers Bank to pay "all the deposit liabilities, except liability to stockholders as such," but with administrative fiat, without notice to the banks, without a hearing and without due process of law, he stripped the banks of their only assets, which, it is alleged and not denied, were sufficient to pay all the debts of the banks without the necessity of making an assessment, and thereupon substituted the portion of the assets of the Farmers Bank, to which he thought under changed conditions and materially different circumstances the other two banks would be entitled at that time. He thus without authority and contrary to law tried to create a new situation upon which he determined the necessity of enforcing individual liability of stockholders.

There were no answers filed to the bills in these cases. The motions to dismiss them have the effect of a demurrer and all the facts properly alleged are admitted. While some of the allegations may ·be conclusions of law or inferences of fact, the following may be taken as admitted:

1. The only assets of the two banks are their claims against the Farmers Bank.

2. These claims are sufficient to pay the debts of the two banks without the necessity of an assessment.

3. The Comptroller refused to resort to these claims and use them to pay the debts of the two banks.

The bill alleges in the case of the Penn Bank that the assets transferred to the Farmers Bank had at that time a fair value of over $6,500,000 and after depreciation had a fair and reasonable net market value of more than $350,000 over its liabilities. It is alleged in the bill that the assets transferred to the Farmers Bank by the Reading Bank on February 17, 1933, in accordance with the agreement had "a fair and reasonable value in excess of the deposit liabilities of said Reading National Bank." The motions admit the truth of these allegations.

It is well settled that an assessment upon stockholders to enforce individual liability may not be attacked collaterally. Kennedy v. Gibson, 8 Wall. (75 U.S.) 498, 19 L.Ed. 476; Casey v. Galli, 94 U.S. 673, 24 L.Ed. 168. But when the head of a department exceeds his authority, abrogates valid contracts, and proceeds as though such contracts had never been made, he may be restrained by injunction which is a direct attack upon his acts and is the recognized mode of procedure by which the wrongful action of the executive head of a department may be restrained. "Where the terms and meaning of an act of Congress are plain, and a court is convinced upon reason and authority that a correct determination of the question before it requires a decision contrary to the construction and practice of the officers of an executive department of the government, that determination must prevail, and that decision must be rendered. The courts cannot lawfully renounce their judicial powers in favor of opinions of officers of other departments." Where the administrative order of an executive head is based upon a clear error of law, fraud, or mistake, it may be avoided by a direct attack. Deweese v. Smith et al. (C.C.A.) 106 F. 438, 445, 66 L.R.A. 971; United States ex rel. Citizens' Nat. Bank v. Knox, 102 U.S. 422, 26 L.Ed. 216; Swift & C. & B. Co. v. United States, 105 U.S. 691, 26 L.Ed. 1108; Merritt v. Cameron, 137 U.S. 542, 11 S.Ct. 174, 34 L.Ed. 772; Noble v. Union River Logging R. Co., 147 U.S. 165, 172, 13 S.Ct. 271, 37 L.Ed. 123; United States v. Tanner, 147 U.S. 661, 663, 13 S.Ct. 436, 37 L.Ed. 321; Webster v. Luther, 163 U.S. 331, 342, 16 S.Ct. 963, 41 L.Ed. 179; American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90.

The Comptroller exceeded his power and authority when he abrogated and set aside the contracts between the Farmers Bank on the one side and the Penn Bank and the Reading Bank on the other.

His motions to dismiss the bills admit the allegations that the claims of the Penn and Reading Banks against the Farmers Bank are more than sufficient to pay their indebtedness without the necessity of making an assessment.

Under these circumstances the Comptroller has no authority to levy an assessment against the appellants. They are invalid, and the orders dismissing the bills of complaint and denying preliminary injunctions are reversed.

BUFFINGTON, Circuit Judge (dissenting):

These cases involve the levying by the Comptroller of a 100 per cent. assessment on the shareholders of two national banks in the hands of receivers. In each case the court below dismissed a bill in equity brought by a stockholder praying an injunction restraining the receiver from collecting such assessment.

The facts of the case are that the Penn National Bank & Trust Company of Reading, hereafter called Penn, and the Reading National Bank & Trust Company, hereafter called Reading, were national banks. On February 17, 1933, these two banks entered into a written agreement with the Farmers National Bank & Trust Company, also a national bank, and hereafter called Farmers, for a consolidation of Penn and Reading with Farmers; the latter agreeing to pay all obligations of Penn and Reading. This agreement was followed by a transfer by Penn and Reading of all their assets to Farmers and the latter assumed control of them. Thereafter Penn and Reading ceased doing business. On March 18, 1933, the Comptroller appointed a conservator for Farmers, who administered the assets of all three banks until October 10, 1933, when the Comptroller directed that the agreements of consolidation should be disregarded and then appointed conservators for Penn and Reading. The bill alleges he had no power at law to so order and that he has disregarded and failed to enforce the claim of Penn and Reading against Farmers—for which latter a receiver was appointed—as have also the receivers of Penn and Reading. The receivers of Penn and Reading have proceeded to collect and administer the returned assets and on January 15, 1935, the Comptroller made the assessment complained of, in which he recited (italics mine): "Whereas, upon a proper accounting by the Receiver heretofore appointed to collect the assets of The Penn National Bank and Trust Company, of Reading, Pennsylvania, and upon a *valuation of the uncollected assets* remaining in his hands, it appears to my satisfaction that in order to pay the debts of such association it is necessary to enforce the individual liability of the stockholders therefor to the extent hereinafter mentioned, as prescribed in section 5151 and 5234 of the Revised Statutes of the United States, section 1, c. 156, Act of June 30, 1876, and section 23, Act approved December 23, 1913, known as Federal Reserve Act."

It therefore appears the receivers have collected the assets of said banks and on the basis of what has been collected and the valuation of those not collected (which would include the alleged claims of Penn and Reading against Farmers) it was necessary to assess the shareholders 100%. In that regard the court below stated: "Granted that the Comptroller should have taken the situation as it existed when the Bank closed instead of proceeding to undo and unscramble the assets, there is absolutely nothing to show that, as a matter of assets and liabilities, these stockholders have suffered by the method adopted by the Comptroller. Whether the agreement of the Farmers Bank to pay deposit liabilities was worth more or less than the assets which were allocated in its place is not shown. Inferentially, it would not appear to have been worth its face value since the Farmers Bank was also in receivership and is now in process of reorganization." And accordingly held: "It is perfectly clear from the later decisions that it was never meant that the stockholders could institute an inquiry into the correctness of the Comptroller's determination, and proceed to fix the amount of their liability as on an accounting, by a proceeding in equity, pending which, suits are to be stayed. Such interpretation would utterly defeat the whole purpose of the policy involved which is to 'expeditiously and justly wind up the affairs and the paying of debts of National Banks'".

Its so holding was in line with decision of this court in Miller v. Stock, 65 F.(2d) 773, 90 A.L.R. 1061, and the Supreme Court cases there cited. Regarding the dismissal of the bill was rightly ordered by the court below, I am constrained to dissent.