## HALL v. BALLARD.
### No. 4161.

Circuit Court of Appeals, Fourth Circuit.

June 14, 1937.

940

Robert L. Pennington, of Bristol, Va., and Harriet L. French, of Bluefield, W. Va., for appellant.

Albert S. Kemper, Jr., and George Richardson, Jr., both of Bluefield, W. Va. (Wm. T. Hancock and Richardson & Kemper, all of Bluefield, W. Va., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and WYCHE, District Judge.

WYCHE, District Judge.

This is an appeal from·a judgment of the District Court for the Southern District of West Virginia, sustaining a plea of the statute of limitations interposed by appellee to an action by appellant for stockholders' liability on stock held and owned by appellee in the Peoples National Bank of Abingdon, Va.

One phase of the cause has heretofore been before the Circuit Court of Appeals of this Circuit in the case of Scott et al. v. Norton Hardware Company et al., reported in 54 F.(2d) 1047. The opinion and transcript of record in that case are made a part of the record in this appeal; and it appears therefrom that at a meeting of the directors of the Peoples National Bank of Abingdon, Va., held on April 2, 1926, upon the urgent advice of the National Bank Examiner, a contract was made with the First National Bank of Abingdon, under which the Peoples National transferred all of its assets to the First National, which agreed to pay in. full the claims of the depositors and certain other indebtedness, and after reimbursing itself for the payments so made and the expenses incident thereto, to return the remaining of the assets, if any, to the Peoples National, or its liquidating agent. The

contract further provided that the Peoples National should deliver to the First National a bond in the sum of $100,000, executed by nine of its directors and conditioned to indemnify the First National against any loss under the contract, which bond was duly executed and delivered. That contract obviated the necessity of a receivership and an immediate stock assessment, and which, in addition to protecting depositors and other creditors, was expected to result in salvaging something from its assets for the benefit of stockholders, the opinion having been expressed by the National Bank Examiner on the date of the agreement that there were ample assets to pay all the obligations of the bank, if handled by the First National Bank as a going concern. Thereafter, at a meeting of its stockholders held on May 20, 1926, it was decided by a vote of the required number of stockholders, to place the Peoples National in voluntary liquidation, and liquidating agents were appointed for that purpose under the provisions of 12 U.S.C.A. § 181 and note. On the 24th day of May, 1929, final judgments in favor of Norton Hardware Company and Norton Grocery Company were rendered against the Peoples National in the sum of approximately $4000. Executions were duly issued upon said judgments and returned unsatisfied on August 22, 1929. On November 4, 1929, H. H. Scott and G. A. Maiden, two of the directors of the Peoples National, who, along with seven other directors, had signed the bond to indemnify the First National against loss under the contract, were called upon by the First National to pay upon the bond the loss which that bank had sustained under the contract; and they were required to pay, and did pay to the First National the sum of $65,335.92. The First National had already collected $30,000 from another of the bondsmen; and this amount, together with the $65,335.92, paid by Scott and Maiden, reimbursed it for the loss which it had sustained under the contract. There then remained in its hands uncollected notes and other assets of the Peoples National of a face value of approximately $105,000, which, under the contract, belonged to the Peoples National, or its liquidating agent.

On the 22d day of November, 1929, Norton Hardware Company and Norton Grocery Company applied to the Comptroller of the Currency, under the provisions of 12 U.S.C.A. § 191, to appoint a receiver to take charge of the Peoples National, and to enforce the personal liability of its shareholders, said application being accompanied by the certificate of the Clerk of court of Wise county, Va., required by the foregoing statute, which application was denied by the Comptroller of the Currency on May 7, 1930, for the reason, as stated by him, that he felt that applicants should resort to their remedy of a bill in equity. Subsequently, on August 16, 1930, Norton Hardware Company and Norton Grocery Company filed a suit in equity in the District Court for the Western District of Virginia, in the nature of a creditor's bill, presumably under the Act of June 30, 1876, c. 156, § 2, 19 Stat. 63, 12 U.S.C.A. § 65, against the Peoples National Bank and its stockholders to enforce the personal liability of the stockholders of the Peoples National Bank, appellee not being served with process, but being classified in said suit as a nonresident stockholder. On September 12, 1930, H. H. Scott and G. A. Maiden filed an intervening petition in that proceeding, also in the nature of a creditor's bill, presumably under the foregoing statute, and asserted against the Peoples National and its shareholders their claim in the total amount of $65,335.92. In that intervening petition Scott and Maiden claimed the right of subrogation and asked that the assets of the Peoples National be placed in the hands of a receiver to be administered for their benefit, and that the statutory liability of the stockholders of the Peoples National be enforced so far as might be necessary for their reimbursement. The petition of Scott and Maiden was dismissed on January 21, 1931, by the District Judge, which order of dismissal was subsequently reversed by this court. 54 F.(2d) 1047.

The Circuit Court of this Circuit decided in that appeal that Scott and Maiden by reason of their payments under the bond occupied the position of creditors of the Peoples National, that they were entitled to subrogation to the rights of the First National as against the remaining assets of the Peoples National, and that they had the right either as creditors of the Peoples National, or by virtue of subrogation to the rights of the First National to enforce the statutory liability against the shareholders of the Peoples National. That cause was remanded for further proceedings in conformity with the opinion therein. Thereafter the issues were accordingly tried and resulted on July 17, 1934, in judgment being ren-

dered against the Peoples National in favor of H. H. Scott for $25,334.31, and G. A. Maiden for $17,284, respectively, and adjudging the shareholders of the Peoples National to be liable to the extent of $100 for each share owned by them with interest from July 17, 1934, and appointing Leonard R. Hall receiver and giving judgment in his favor as such receiver for the benefit of Scott and Maiden against each of the shareholders who had been served with process in the cause and making an assessment against such of the other shareholders as were not served with process in the suit who were nonresidents of the state, and directing the receiver to collect enough money to discharge the judgments and costs of the proceedings from the shareholders not to exceed $100 for each share owned.

Thereafter, on July 25, 1935, Leonard R. Hall, as receiver of the Peoples National, filed a motion for judgment under section 5523, West Virginia Code of 1932 (which motion under the West Virginia statutes serves the double purpose of process and pleading), in the United States District Court for the Southern District of West Virginia, against E. S. Ballard, a resident of said district for the sum of $1,000, with interest, notifying Ballard in said motion for judgment that the said indebtedness was upon a stock assessment on ten shares of said stock held and owned by him in the Peoples National Bank of Abingdon, and notifying him of the proceedings that had been taken in the suit in equity filed by Norton Hardware Company and Norton Grocery Company and H. H. Scott and G. A. Maiden in the District Court for the Western District of Virginia. Ballard duly appeared, and, among other pleas, filed the plea of statute of limitations of the state of West Virginia. The District Court sustained this plea and dismissed the action.

The individual liability of shareholders in national banks was imposed by the provisions of the Act of June 3, 1864, c. 106, 12 U.S.C.A. §§ 63 and 64, under the provisions of which the Comptroller of the Currency was empowered to appoint receivers and enforce the liability of shareholders in the following cases: (1) Where the bank had refused to pay its circulating notes; (2) where it failed to maintain its capital at the minimum; (3) where it failed to maintain its reserve; (4) where it failed to redeem its circulating notes, or to

select a place at which it would redeem them; (5) where it failed to dispose of its stock taken as security within six months; and (6) where it failed to pay up its capital stock and refused to go into liquidation. This act also authorized the closing and voluntary liquidation of national banks by the vote of its shareholders owning two-thirds of its stock. Act of June 3, 1864, c. 106, § 42, 13 Stat. 112, Rev. Stat. § 5220, 12 U.S.C.A. § 181 and note.

In 1876, Congress passed "an act authorizing the appointment of receivers of national banks, and for other purposes." Approved June 30, 1876, c. 156, 19 Stat. 63, 12 U.S.C.A. §§ 65 and 191.

Section 1 of that act empowered the Comptroller of the Currency, after due examination of the affairs of the bank, to appoint a receiver to proceed to close up the association and enforce the personal liability of its shareholders in the following cases: (1) When any national bank was dissolved and its charter forfeited, as prescribed in section 5239 of the Revised Statutes (12 U.S.C.A. § 93); (2) when any creditor obtained a judgment against the bank which had remained unpaid for the space of thirty days, and when the Comptroller of the Currency became satisfied of its insolvency. 12 U.S.C.A. § 191, Act of June 30, 1876, c. 156, § 1, 19 Stat. 63. Under the direction of the Comptroller the receiver is authorized to take possession of the books, records, and assets of every description of such association, collect all debts, dues, and claims belonging to it, and upon the order of court of competent jurisdiction sell or compound all bad or doubtful debts, and on like order, sell all real and personal property of such association on such terms as the court shall direct, and if necessary to pay the debts of such association, enforce the individual liability of the shareholders. Such receiver shall pay over all money so made to the Treasurer of the United States, subject to the order of the Comptroller, and also make a report to the Comptroller of all his acts and proceedings. 12 U.S.C.A. § 192 and note, Act of June 3, 1864, c. 106, § 50, 13 Stat. 114, Rev.St. § 5234, as amended in 1916.

Section 2 of the Act of June 30, 1876, substantially provides:

"When any national banking association shall have gone into liquidation under the provisions of section 181 of this title, the individual liability of the shareholders pro-

vided for by section 63 of this title may be enforced by any creditor of such association, by bill in equity, in the nature of a creditor's bill, brought by such creditor on behalf of himself and of all other creditors of the association, against the shareholders thereof, in any court of the United States having original jurisdiction in equity for the district in which such association may have been located or established."

12 U.S.C.A. § 65.

The foregoing provisions of the Act of June 3, 1864, and section 1 of the Act of June 30, 1876, empower the Comptroller of the Currency, after due examination of the bank, to enforce the personal liability of stockholders in national banks by a suit of the receiver appointed by him; and under the provisions of the same it has been decided that no portion of the liability of the shareholders for the payment of the debts of the bank become due until the Comptroller of the Currency decides that it is necessary to collect it, makes the assessment accordingly, and fixes the time for its payment, and the right of the receiver to bring the action to collect the assessment so made does not accrue until such assessment is made and the date is fixed by the Comptroller for its payment. Rankin v. Barton, 199 U.S. 228, 26 S.Ct. 29, 50 L. Ed. 163; Nagle v. O'Connor (C.C.A.) 88 F.(2d) 936; Deweese v. Smith (C.C.A.) 106 F. 438, 66 L.R.A. 971; Page v. Jones (C.C.A.) 7 F.(2d) 541; Brown v. Ellis (D.C.) 103 F. 834; Aldrich v. Yates (C. C.) 95 F. 78; Aldrich v. Skinner (C.C.) 98 F. 375; Rankin v. Miller (D.C.) 207 F. 602.

Prior to the passage of section 2 of the Act of June 30, 1876 (12 U.S.C.A. § 65), federal courts already had jurisdiction, sitting in equity, to appoint a receiver, and through him to administer the affairs of an insolvent national bank, to collect the trust fund pledged to its creditors and to liquidate its debts. That power was established in that court when it was created. There was no other adequate remedy to enforce the liability of shareholders of insolvent national banks in voluntary liquidation under the Act of June 3, 1864. The individual liability of shareholders in national banks was a trust fund, or the pledge of a trust fund, for the benefit of the creditors of the bank and a federal court of equity had plenary power to appoint a receiver and to authorize him to enforce that liability

by actions at law. King v. Pomeroy (C.C. A.) 121 F. 287; Richmond v. Irons, 121 U.S. 27, 44, 48, 50, 7 S.Ct. 788, 30 L.Ed. 864; Irons v. Manufacturers' Nat. Bank, Fed.Cas. No. 7,068; Irons v. Manufacturers' Nat. Bank (C.C.) 17 F. 308, 312, 313; Wright v. Merchants' Nat. Bank, Fed.Cas. No. 18,084; Elwood v. First Nat. Bank, 41 Kan. 475, 21 P. 673; Harvey v. Lord (C.C.) 10 F. 236, 238, 239; Wilson v. Book, 13 Wash. 676, 43 P. 939, 940; Farmers' Loan & Trust Co. v. Funk, 49 Neb. 353, 68 N.W. 520, 522, 524; Hayden v. Thompson, 71 F. 60, 66, 17 C.C.A. 592, 598.

The proper remedy in cases of voluntary liquidation of national banks to enforce the shareholders' liability was by a suit in equity for the benefit of all the creditors in the nature of a creditor's bill, in which suit the bank was a necessary party for the reason that it was necessary to examine the affairs of the bank to determine what part, if any, of the shareholders' liability would be necessary to be enforced against them. The determination of the necessity of enforcing the shareholders' liability and the adjudication of the amount required from the shareholders to complete the liquidation of the debts of the bank was a necessary step before proceeding to collect from the shareholders. In other words, before this liability could be enforced at all its amount had to be ascertained and determined. A federal court in equity had the power thus to proceed in which proceedings its decisions and orders were as conclusive as were the decisions and orders of the Comptroller of the Currency in his jurisdiction. King v. Pomeroy, supra; Richmond v. Irons, supra.

[1] The provisions of section 2 of the Act of June 30, 1876 (12 U.S.C.A. § 65) did not limit the power of a court of equity; it did not take from such court any power that it then possessed; it did not prescribe a remedy different from the one creditors of national banks already had; it did not change the nature of the proceedings. It directed that such suit in equity in the nature of a creditor's bill be brought in the district court where the national bank is located, but was not such District Court already the proper jurisdictional venue for such suit? The effect of the provisions of the statute (12 U.S.C.A. § 65) was to give legislative approval of the remedy already afforded creditors of national banks in voluntary liquidation to enforce the stockholders' liability.

In United States ex rel. Citizens' Nat. Bank v. Knox, 102 U.S. 422, 425, 26 L.Ed. 216, the Supreme Court said:

"In the process to be pursued to fix the amount of the separate liability of each of the shareholders, it is necessary to ascertain, 1, the whole amount of the par value of all the stock held by all the shareholders; 2, the amount of the deficit to be paid after exhausting all the assets of the bank; 3, then to apply the rule that each shareholder shall contribute such sum as will bear the same proportion to the whole amount of the deficit as his stock bears to the whole amount of the capital stock of the bank at its par value."

In Bernheimer v. Converse, 206 U.S. 516, 27 S.Ct. 755, 761, 51 L.Ed. 1163, the Supreme Court said:

"The cause of action did not accrue until the receiver could sue upon the assessment after the stockholder had failed to pay, as required by the order of the Minnesota court," citing as authority for such conclusion the case of King v. Pomeroy (C.C.A.) 121 F. 287.

■ The stock liability of a stockholder of a national bank is conditional. He is responsible not for the amount of his stock, but for all the contracts, debts, and engagements of the bank to the amount of the par value of his stock. The stock may not be assessed by the Comptroller of the Currency until he has ascertained what sum it will be necessary to obtain from the stock assessment to meet the contracts, debts, and engagements of the bank because the stockholders are only conditionally liable after all the ordinary resources of the bank have been exhausted. Nagle et al. v. O'Connor, etc. (C.C.A.) 88 F.(2d) 936; National Bank v. Kennedy, 17 Wall. (84 U.S.) 19, 22, 21 L.Ed. 554. The character of this liability of the stockholder is not changed because the bank goes into voluntary liquidation and the shareholders' liability is enforced by a suit in equity in the District Court instead of by the Comptroller of the Currency.

It would seem, therefore, that where a suit is instituted under the statute (12 U.S.C.A. § 65) in the nature of a creditor's bill to enforce such shareholders' liability, for the same reasons the bank is a necessary party and the ascertainment of the debts and liabilities of the bank and the judicial determination of the necessity of the enforcement of the stockholders' liability, and the amount to be collected from them, are likewise essential prerequisites to the collection of the amounts owing by the stockholders.

■ For the foregoing reasons, we are impelled to the conclusion that in an action by a receiver to enforce the liability of a shareholder of an insolvent national bank, whose affairs are in the course of judicial administration in a proper proceeding in the federal court for the purpose of liquidating its debts, the liability of the shareholders of the bank does not become due, does not mature, and the action to collect it does not accrue until the court decides that it is necessary to collect some part of it, determines the amount and fixes the date for its payment. King v. Pomeroy, supra; Richmond v. Irons, supra; Bernheimer v. Converse, supra; Williamson v. American Bank (C.C.A.) 115 F. 793. And, this result, by analogy, is supported by the following authorities: Deweese v. Smith, supra; Glenn v. Liggett, 135 U.S. 533, 10 S.Ct. 867, 34 L.Ed. 262; Glenn v. Marbury, 145 U.S. 499, 12 S.Ct. 914, 36 L.Ed. 790; McDonald v. Thompson, 184 U.S. 71, 22 S.Ct. 297, 46 L.Ed. 437; Foster v. Lincoln (C.C.) 74 F. 382, 383; Id. (C.C.A.) 79 F. 170; Goess v. Holding Corp. (C.C.A.) 85 F.(2d) 72; Aldrich v. Skinner (C.C.) 98 F. 375; Murray v. Sill (C.C.A.) 7 F.(2d) 589; Gilbertson v. McCarthy (C.C.A.) 32 F.(2d) 665; Luce v. Thompson (C.C.A.) 36 F.(2d) 183; Nagle v. O'Connor (C.C.A.) 88 F.(2d) 936; National Bank v. Kennedy, 17 Wall. (84 U.S.) 19, 22, 21 L.Ed. 554; United States ex rel. Citizens' Nat. Bank v. Knox, 102 U.S. 422, 425, 26 L.Ed. 216.

Therefore, the cause of action against appellee here never accrued until July 17, 1934, the date upon which the United States District Court for the Western District of Virginia, first ascertained the necessity and ordered the payment of 100 per cent. of the par value of the stock and appointed Leonard R. Hall receiver, who was ordered and directed on that date to collect the shareholders' liability not to exceed $100 for each share owned by them.

Counsel for appellee contend, however, that the cause of action to enforce the individual liability of the stockholders of the Peoples National accrued on August 22, 1929, the date on which executions against the Peoples National were returned unsatisfied, that on that date the creditors were aware of the insolvency of the bank and the consequent liability of its stockholders, and an action could have been com-

menced on that date to enforce such liability, and rely for such contention upon the case of Warner v. Citizens' Nat. Bank (C.C.A.) 267 F. 661.

█ It is true that liquidation and insolvency transform the potential liability of shareholders into one presently enforceable. Brown, Jr. v. O'Keefe, 57 S.Ct. 543, 81 L. Ed. ——. If the Comptroller of the Currency liquidates the bank, the liability is enforceable upon his direction by the suit of the receiver, and the cause of action accrues when the Comptroller makes the assessment and fixes the time for its payment. If the bank is in the course of voluntary liquidation the liability is enforceable by a suit in equity in the nature of a creditor's bill, and the right to bring such creditor's bill accrues when insolvency becomes manifest. Brown, Jr. v. O'Keefe, supra. But, the statute of limitations does not begin to run in favor of the stockholder upon the insolvency of the bank, except, by analogy, as to the suit in equity to determine the amount of the' liability. The liability of the stockholder is contingent upon the amount of the ordinary assets of the bank. The stockholder is entitled to a discharge in bankruptcy from this liability (Brown, Jr., v. O'Keefe, supra) just as from any other contingent liability, for example, as that of an indorser; but like such other contingent liability it is not barred by limitation until the statutory period has run after the obligation has become fixed and absolute. The statute does not protect an indorser until the statutory period has run after his liability has become fixed, although he might be discharged of the liability in bankruptcy before the indorsed instrument became due.

█ In the Warner Case, relied upon by counsel for appellee, a suit in equity was commenced by certain creditors against the stockholders of the bank more than seven years after execution on judgment against the bank had been returned unsatisfied. The period of the applicable statute was three years. The suit was dismissed on the ground that the creditors had been guilty of laches when the applicable statute of limitations was' applied by analogy. It is true that the cause of action against the shareholders accrued after the return of the execution unsatisfied. As stated in the opinion in that case, this has reference to the accrual of the right to sue to fix the liability of the stockholders. The judgment against the bank for the indebtedness to the creditors did not fix the amount for which it was necessary to call upon the stockholders and could not take the place of an assessment by the Comptroller. A statement to that effect in the opinion is mere dictum and, as it is out of line with the authorities, cannot be followed. Therefore, this contention of counsel is answered by the fact that a suit in equity to administer the affairs of the bank and enforce the stockholders' liability was instituted on August 16, 1930, approximately one year after the right to bring such a suit accrued. Such suit in equity was similar to the proceedings of the Comptroller of the Currency in cases within his jurisdiction, and in suits in a federal court of equity in its original jurisdiction, a proceeding to ascertain and enforce the liability of the shareholders as well as to administer all the assets of the bank. That ascertainment and enforcement was a part of the liquidation proceedings so that no time under the applicable statute of limitations ran against the creditors during the pendency of that suit. King v. Pomeroy, supra; Richmond v. Irons, supra; Williamson v. American Bank, supra.

The intervening petition of Scott and Maiden for the ascertainment and enforcement of the liability of the shareholders first filed on September 12, 1930, a little more than one year after the right to file the suit in equity accrued, even though it conferred no power and invoked no jurisdiction which the court could not as well have exercised on the original petition, was filed well within the applicable statute of limitations as will hereinafter appear. Hence a proper suit under both the statute (12 U.S.C.A. § 65) and the general jurisdiction of a court in equity was commenced on August 16, 1930, and certainly not later than September 12, 1930. King v. Pomeroy, supra; Richmond v. Irons, supra; Williamson v. American Bank, supra.

█ It should be noted, however, that the statute of limitations prescribed by a state does not apply to suits in equity in federal courts. Such statutes, however, are generally followed by analogy in cases of equity in determining the question of laches. Kelley v. Boettcher (C.C.A.) 85 F. 55; Wagner v. Baird, 7 How. 234, 12 L.Ed. 681; Godden v. Kimmell, 99 U.S. 201, 25 L.Ed. 431; Wood v. Carpenter, 101 U.S. 135, 136, 139, 25 L.Ed. 807; Rugan v. Sabin (C.C.A.) 53 F. 415, 420.

▮ There is no question of laches involved in this case and even if there were it would have no merit, because the suit in equity was brought well within the time fixed by the analogous statute and appellee has not shown the existence of any extraordinary circumstances which require the application of the doctrine of laches, on the contrary it appears that the creditors of the Peoples National were very alert in availing themselves of the remedies afforded by the law. Norton Hardware Company and Norton Grocery Company each obtained its judgment against the Peoples National Bank and after the return of executions unsatisfied, applied to the Comptroller of the Currency under the statute to appoint a receiver, liquidate the affairs of the bank and enforce the shareholders' liability. The Comptroller refused the application and recommended a suit in equity, which the creditors promptly adopted, and commenced on August 16, 1930, a little less than one year after it became known that the Peoples National was insolvent, the suit in equity. The statute of limitations of West Virginia and Virginia is the same, that of West Virginia being 55-2-12, West Virginia Code of 1931, and of Virginia being section 5818, Virginia Code of 1930, and the period is five years. The receiver brought his action on the assessment of the stockholders' liability against appellee within about a year's time after he had a right to bring it. The amount of appellee's liability was lawfully determined on July 17, 1934, by the District Court for the Western District of Virginia.

▮ Counsel for appellee also contend that Scott and Maiden in their intervening petition could have made Ballard a party to the creditor's suit instituted in the United States District Court in the Western District of Virginia, and caused process to be issued and served on Ballard by the United States Marshal in Mercer county, W. Va., under the theory that section 65, title 12 U.S.C.A., restricts the place of bringing suit to enforce the individual liability of shareholders in that it provides that the suit shall be brought in any court of the United States having original jurisdiction in equity for the district in which such association may have been located or established, and relies for such contention upon the decision of the Circuit Court of Appeals of this Circuit in the case of Williamson v. American Bank, 115 F. 793, at page 797, where this court held:

"Whatever may have been the proper course of procedure to enforce the liability of stockholders to creditors of a national banking association in process of voluntary liquidation prior to the passage of the act of June 30, 1876, we are clearly of the opinion that since its passage the remedy provided by that act is exclusive in such cases, and must be strictly pursued, and that suit must, therefore, be brought 'in any court of equity for the district in which such association may have been located or established,' and not elsewhere."

In that opinion, however, the Circuit Court of Appeals of this Circuit went on to say at page 798:

"* * * and, if any ancillary proceedings should become necessary for the collection from nonresident stockholders of their ratable proportion of the amount necessary to pay the creditors, such proceedings would have to be authorized by the court of original jurisdiction, and brought by a receiver or other official appointed by said court; after a settlement of the accounts of the bank, and a determination of the ratable proportion necessary to be collected."

In that opinion it was also decided that the bank is a necessary party to a suit of creditors under the statute (12 U.S.C.A. § 65). Furthermore, a court of equity has the power to appoint a receiver and authorize him to enforce stockholders' liability in actions at law. Appellant followed the procedure approved by that decision.

In this connection, counsel for appellant cite the case of Taylor v. Fontaine (Mo. App. 1928) 10 S.W.(2d) 68, in which an action was brought in the Missouri court to enforce an assessment made in a creditor's suit under the statute (12 U.S.C.A. § 65) in a United States District Court in Texas, against several of the nonresident shareholders residing in Missouri. The shareholders contended that the decree of the United States District Court in Texas making an assessment was not binding upon them. The Kansas City Court of Appeals of Missouri, however, held that the nonresident stockholders of the national bank were not necessary parties to the action by the creditors under the statute (12 U.S.C. A. § 65) to determine the liability of the bank and necessity for assessment upon the stockholders upon the theory that the individual liability of the stockholders under the statute imposing the same (12 U.S.C.A. § 64) was but a guarantee to the creditors

of the bank that their claims would be paid to the extent of stockholders' stock at a par value on the condition that assets of the bank proved to be insufficient to pay its liabilities and in such a suit the decree of the United States District Court ascertaining the amount of the bank's liability and necessity for assessment upon stockholders was binding on nonresident stockholders, though they had no notice of such proceedings, upon the theory that the stockholders were integral parts of the bank and were represented by the bank in all proceedings to which the bank was a party and that an action against the nonresident stockholders to enforce the liability of such stockholders which had been determined in the original action by the creditors under the statute (12 U.S.C.A. § 65) may be brought in any jurisdiction where service may be had on such stockholders. The Missouri court apparently founded such decision upon the decision among others, of the Supreme Court in Bernheimer v. Converse, 206 U.S. 516, 27 S.Ct. 755, 760, 51 L.Ed. 1163, 1175, where it said:

"It is true that the stockholder is not necessarily served with process in the action wherein the assessment is made under the act of 1899 [Laws Minn.1899, c. 272], but no personal judgment is rendered against him in that proceeding, and it has reference to a corporation of which he is a member by virtue of his holding stock therein, and the proceeding has for its purpose the liquidation of the affairs of the corporation, the collection and application of its assets and other liabilities which may be administered for the benefit of creditors. In such case it has been frequently held that the representation which a stockholder has by virtue of his membership in the corporation is all that he is entitled to. It was so held in a well-considered case in Massachusetts (Howarth v. Lombard, 175 Mass. 570, 56 N.E. 888, 49 L.R.A. 301). And it has been held in cases in this court that when an assessment is necessary to be made upon unpaid stock subscriptions for the benefit of creditors, the court may make the assessment without the presence or personal service of stockholders."

See, also, Hawkins v. Glenn, 131 U.S. 319, 9 S.Ct. 739, 33 L.Ed. 184; Goss v. Carter (C.C.A.) 156 F. 746; Broderick v. Rosner, 294 U.S. 629, 644, 55 S.Ct. 589, 593, 79 L.Ed. 1100, 100 A.L.R. 1133; Hamilton v. Simon (C.C.) 178 F. 130; Bank of Ware Shoals v. Martin (D.C.N.Y.1936) 17 F.Supp. 61. The procedure adopted by the creditors of the bank and the receiver appointed by the court appearing to have been proper under the law as we understand it to be, it is not necessary to decide whether Ballard could have been legally served with process in the suit in equity brought either by Norton Hardware Company and Norton Grocery Company or by Scott and Maiden.

The act creating the liability of stockholders of national banks fixes no limitation of time for commencing an action to enforce such liability, and there being no other federal statute applicable thereto the statute of limitations of the state where the action was brought governs. Campbell v. Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280; Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 27 S. Ct. 65, 51 L.Ed. 241; McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500. Such being the case here the statute of limitations of the state of West Virginia is applicable.

In the case of Pyles v. Carney et al., 85 W.Va. 159, 101 S.E. 174, the Supreme Court of Appeals of West Virginia decided that the West Virginia statute applicable to such an action is section 12, article 2, chapter 55, West Virginia Code of 1931, which is as follows:

"Every personal action for which no limitation is otherwise prescribed shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that, in case a party die, it can be brought by or against his representative."

The action here of appellant against appellee having been commenced within five years next after the right to bring the same had accrued it is not barred by the statute of limitations of the state of West Virginia.

For the foregoing reasons, the judgment below is reversed and the case is remanded to the District Court for further proceedings not inconsistent with the views expressed in this opinion.

Reversed.